<hr />

### HASLEM et al. v. PITTSBURG PLATE-GLASS CO.

### SAME v. STANDARD PLATE-GLASS CO.

(Circuit Court, W. D. Pennsylvania. December 19, 1894.)

1. PATENTS—INVENTION AND MECHANICAL SKILL—EVIDENCE.
   . The fact that three skillful mechanics, acting independently of each other, suggested the same devices for improving a defective machine, is persuasive evidence that such change involved mechanical skill only, and not patentable invention.

2. SAME—PLATE-GLASS POLISHERS.
   The Haslem reissue, No. 10,872, for improvements in plate-glass polishers, *held* void for want of invention, and because, even if patentable, Haslem was not the first inventor.

These were bills by James Haslem and others against the Pittsburg Plate-Glass Company and the Standard Plate-Glass Company, respectively, for infringement of a patent relating to plate-glass polishers.

S. B. Schoyer, S. Schoyer, Jr., John H. Roney, and Edmund Wetmore, for complainants.

George H. Christy, J. Snowden Bell, and James I. Kay, for defendants.

ACHESON, Circuit Judge. These two cases were heard together, upon substantially the same evidence. Each of the suits is for the infringement of reissued letters patent No. 10,872, dated October 11, 1887, granted to James Haslem for improvements in plate-glass polishers. The original patent was No. 349,430, dated September 21, 1886, issued upon an application filed March 4, 1884. The invention, the specification recites, "relates to that class of machines for polishing plate glass which embody a frame or holder for the plate glass and mechanism for reciprocating the same in one direction and reciprocating rubbers or polishers moving upon the glass in a transverse direction." It is further stated that, "The invention consists in certain details of construction and operating mechanism in such machines, as hereinafter described and particularly pointed out in the claims, whereby plate glass may be smoothly, quickly, and safely polished." The claims are as follows:

1. In a plate-glass polishing machine, the combination of the beams G, G. each carrying a series of loosely-journaled rubbers or polishers, J, on each side thereof, crank shafts upon which said beams are journaled, and means for rotating said crank shafts, the cranks upon which one beam is mounted extending in one direction, and the cranks on which the other beam is mounted being extended in the opposite direction, whereby said beams have a curvilinear reciprocating movement in opposite directions, substantially as set forth.

2. In a plate-glass polishing machine, the combination of beams, G, G, each carrying a series of loosely-journaled rubbers or polishers, J, on each side thereof, crank shafts upon which said beams are journaled, the cranks upon which one beam is journaled extending in one direction, and the cranks upon which the other beam is journaled being extended in the opposite direction, whereby said beams have a curvilinear reciprocating movement in opposite directions, means for rotating said crank shafts, a frame or support for the glass plate, and means for reciprocating said frame or support, substantially as set forth.

The principal defenses are, first, that the alleged invention does not comprise any patentable subject-matter, but involves only the skill of the mechanic in the adoption and application of well-known mechanical principles; second, that, whether patentable or not, Haslem was not the original and first inventor of the improvement.

As bearing on each of these defenses the action of the patent office with respect to the alleged invention deserves mention. On January 12, 1884, William A. Sleeper filed an application for a patent for this identical improvement, and on the 17th day of the same month his attorney addressed a letter to the commissioner of patents asking for a declaration of interference between Sleeper and Haslem, it being supposed then that Haslem's application had been filed. On February 2, 1884, the office rejected Sleeper's application, upon the ground that the improvement was not patentable, citing, inter alia, the Dodé patent and also certain prior "machines to move polishing beams in opposite directions, so as to cause the momentum of one beam to counteract that of the other." Haslem's application, as we have seen, was not filed until March 4, 1884. His claims were subsequently allowed, without any interference having been declared or any opportunity having been afforded Sleeper to contest in the office the question of priority.

Now, confining our attention to the particular art of polishing plate glass, to the exclusion of mechanisms employed for analogous purposes, the proofs touching what was old in this art disclose these facts: The English plate-glass polishing machine which was in use in this country before the alleged invention here in question has two separate polishing beams, parallel to each other, each carrying two series of rubbers or polishing pads and provided with oppositely set cranks, which impart to the two beams a longitudinal reciprocating movement in opposite directions, so as always to balance each other when in motion, while the frame or table supporting the glass has a transverse reciprocating movement under the polishing pads. The Dodé machine described in the French patent of 1872 has a beam composed of three parallel members, each carrying polishing pads, but all connected and moving together, the beam having a curvilinear or orbicular movement, and the table which supports the glass a reciprocating movement in a crosswise direction. Then the "Belgian machine," which, al-

though working in an unsatisfactory and defective manner, was in use at the Jeffersonville plate-glass works, in the state of Indiana, as early as the month of August or of September, 1880, had a single beam carrying a series of loosely-journaled rubbers or polishers, two vertical crank shafts with cranks upon their upper ends, on the pins of which cranks the beam was mounted, and means for rotating the crank shafts, whereby a curvilinear reciprocating motion or orbicular movement was imparted to the beam, the glass holder or support reciprocating transversely below the polishing beam.

In this condition of the art, did it involve invention to duplicate the orbicular beam of the Belgian machine and apply to these duplicated beams the reverse crank adjustment of the English machine, whereby the two orbicular beams were caused to move in opposite directions? I feel constrained to answer negatively. I think that the original decision of the patent office upon Sleeper's application was right. I do not find in the Haslem machine any patentable novelty in combination, function, or result. As confirmatory of the view that this improvement did not call into exercise inventive genius, reference may be made to the fact that, even if priority of conception could be accorded to Haslem, at or about the same time three skillful mechanics,—namely, Haslem, Sleeper, and Edward Ford,—acting independently of each other, suggested the duplication of the orbicular beam in the Belgian machine at the Jeffersonville works, and the application of the reverse-crank movement to the beams. This circumstance furnishes persuasive evidence that the change was obvious to the skilled mechanic. Atlantic Works v. Brady, 23 O. G. 1330, 107 U. S. 192, 199, 2 Sup. Ct. 225.

But if patentability were conceded, is Haslem justly entitled to the credit of the invention? In answering this inquiry, a brief history of the Belgian machine above mentioned must be given. The Jeffersonville Plate Glass Company on May 12, 1880, placed an order for that machine with Sweeney's machine shops, of which William A. Sleeper was superintendent and draftsman. It can safely be said that the machine was completed before the last of July of that year. Now, it is satisfactorily shown that while the machine was in course of construction, and at an early stage of the work, Sleeper suggested to persons interested in the same the employment of two orbicular beams moving in opposite directions, so that the force of one beam would counteract that of the other, and he then made rough sketches embodying his plan. Haslem came to the Jeffersonville plate-glass works on July 27, 1880. He was employed as chief engineer, and as such it was his duty to keep the machinery in repair and ready for operation. He continued in that position until late in the fall of 1883. He states that he had never seen a glass-polishing machine before he came to these works. His asserted claim to the invention will be stated hereinafter. Edward Ford was superintendent of the works when the one-beam Belgian machine was erected. This machine was put to work in August or September, 1880. From the first it worked badly. Its throw was too great for the foundation, and the strain upon the beam often

caused the glass to be pushed off the table. It is clearly proved that, within four or five weeks after the machine was started, Ford recommended to the company the adding of another like beam to that machine, with an adjustment of shafts and gearing whereby the two beams would be moved in opposite directions, so as to equalize the strain. To the president of the company and to several of the employés he fully explained at that time this proposed change. Shortly afterwards he made complete drawings of such a machine. I think it is established beyond question that his drawings were finished and exhibited to several persons before Christmas, 1880. These identical drawings are in evidence. The only criticism made with respect to them is that they do not positively show how the beams are to be moved in relation to each other; but upon this point no user or skilled constructer would have any doubt. Moreover, Ford's explanations to the witnesses in the fall of 1880 as to the opposite movement of the beams and the object to be thereby attained were full and clear. In February, 1881, the Jeffersonville Plate Glass Company took bids upon these drawings of Ford for a machine as therein shown. The company, however, lacked money, and, the bids being thought too high, nothing further was then done. Subsequently other changes were made in the operating mechanism of the machine, but its defects were not thus cured. In the year 1883 the board of directors of the company directed H. T. Sage, the then superintendent of the works, to change the machine into a two-beam machine. This order Sage communicated to Haslem. The change was made during that year. Haslem had such general oversight of the work as appertained to his position as chief engineer, but the actual work was done by others. Everything in the old machine was used in the new, and the parts were duplicated. Mr. Galey, who did most of the work, testifies that the only drawings used were those of Mr. Sleeper, to which he was permitted by Sleeper to have free access at Sweeney's machine shops. Those drawings, Galey states, bore date 1880, and showed a complete machine of this kind.

Mr. Haslem alleges that his conception of the machine described in his patent was anterior to the conception of either Sleeper or Ford, and that his sketches and drawings were earlier than theirs; that he was the first to suggest the erection of such a machine at the Jeffersonville works, and that in fact he advised and brought about the change there made, and that he built the new two-beam machine in conformity with his drawings. To this effect he testifies, and, in support of his claim of priority, the plaintiffs have examined a number of witnesses; but I do not think that Mr. Haslem's allegations are sustained by the proofs. Haslem's own testimony is uncertain and lacks consistency. When first upon the stand he said: "I commenced my invention in the fall of 1880. I think I commenced making the drawings in September. * * * I got my drawings up in the fall of 1880, and built the machine in the fall of 1883." On cross-examination, being asked how long he worked on his drawing, he answered: "I worked on it for some time; I could not tell how long. I made several drawings before I

got one to suit me. I made several changes." In answer to the question when he first got the drawing completed, he said: "Some time in the winter of 1880, in pencil; I didn't ink it until some time afterwards. * * * I can't tell exactly what time I finished them; some time in the winter." Being asked if he could swear positively that he finished the drawing that suited him before February, 1881, he answered: "I am not willing to swear positively; I cannot remember. I think it was. I think it was before January that I finished them, but I am not positive." When on the stand later, in rebuttal, he testified that he conceived the idea of his machine within two weeks after he came to the Jeffersonville works, and before he had ever seen or heard of the one-beam Belgian machine; that he made sketches of his machine in August, 1880, and he produced sketches which he stated were the ones he then made; but with respect to these sketches he is not corroborated by any witness, and the probabilities are all against his having made them at that date. In so stating, Mr. Haslem, it seems to me, is laboring under a great mistake. Then, again, the corroborative evidence as to his alleged disclosures made in the fall of 1880, and the alleged exhibition of his drawings prior to the year 1881, is vague and very unsatisfactory. In my judgment, the decided weight of the evidence upon this branch of the case is with the defendants. I am quite convinced by the proofs that in the conception of the improvement in question, and in the embodying of it in working drawings, Mr. Haslem was anticipated by both Sleeper and Ford. Let a decree be drawn dismissing the bill of complaint, with costs.