NATIONAL TUBE CO. v. SPANG et al.

(Circuit Court of Appeals, Third Circuit. Feb. 1, 1905.)

No. 7.

PATENTS—INVENTION—MANUFACTURE OF TUBING.

The Patterson patent, No. 581,251, for the manufacture of tubing, covering the method by charging the plates into the furnace from the rear and withdrawing them from the front by means of tongs or other suitable device, which also draws them through the welding bell, is void for lack of patentable invention. The advantages of back charging in the manufacture of such pipe, as was practiced in the making of lap-weld pipe, were previously known, and it was practiced by at least one method. The method of the patent was merely a part of the steady evolution and development of the art in mechanical means, not involving invention.

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

For opinion below, see 125 Fed. 22.

James I. Kay and John R. Bennett, for appellant.

Wm. L. Pierce and Frederic H. Betts, for appellees.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

GRAY, Circuit Judge. This suit was brought by the appellant, the complainant below, for alleged infringement of letters patent No. 581,251, granted April 20, 1897, to Peter Patterson, for an improvement in the manufacture of tubing, and by him assigned to the appellant, the complainant below.

The state of the art to which the alleged invention applies, is thus described in the specifications of the patent in suit:

"My invention relates to the manufacture of butt-weld pipe or tubing from flat metal plates or strips, its object being to overcome certain existing defects and difficulties in this art and to facilitate the manufacture of the tubing, both as to the heating of the plates from which the tubing is formed

(including the time consumed for heating and the even heating of the same) and the ease of working, both for feeding the plates to the furnace and the withdrawal of the same therefrom. This class of tubing is formed of comparatively thin flat metal plates or strips, which are raised to a welding heat in a furnace and are then drawn through bell-shaped dies known as 'welding-bells,' in which the flat strips are bent into circular form and their edges butted together with sufficient force to cause them to weld. The bottom of the heating furnace has generally been formed of sand, gravel, or like loose material to withstand the high heat, receive the cinder produced by the melting and oxidation of the metal, and permit the plates to slide easily, and has been slightly inclined from front to rear to provide for the discharge of the cinder at the rear end of the furnace.

"The usual way of preparing the flat plates prior to heating and drawing them through the welding-bells has been to suitably trim the end to be introduced into the bell and thereby form a tongue thereon, and to bend up the edges of this tongued portion slightly to impart to it a tendency to turn in the bell in the direction in which the edges are bent, and either to secure to this tongued end a drawing-rod termed a 'tag' prior to heating the plate or to grasp the tongued end of the heated plate by tongs, and by the tag or the tongs draw it through the welding-bell. The regular method of heating the plate has been to introduce it with the square or untrimmed end foremost into the same end of the furnace from which the plate is to be withdrawn, and when the plate is heated to draw it out by means of the tag or tongs applied to the opposite or tongued end, so that the end of the plate which first enters the furnace is the last to be withdrawn therefrom. The plates or strips are thin and flexible and are generally from eighteen to twenty feet in length. They are difficult to handle, bending and sagging in the hands of the workmen, and are liable when pushed into the furnace to scrape over and tear up the loose gravel bottom, so that it is found necessary to turn up the square or untrimmed end of the plate which is first introduced to enable it to slide over the loose furnace-bottom.

*    *    *    *    *    *    *    *    *    *

"The foregoing method of manufacturing butt-weld pipe has several objections or defects, among which are the following: The heat of the furnace is so high that the time required to introduce the plates (which are generally of comparatively thin metal) and to withdraw them is a material part of the time required to bring them to the welding heat, and as the square end of the plate is the part first introduced into the furnace and the last part withdrawn therefrom the edges of that portion of the plate are often too highly heated before the edges of the opposite or tongued portion (which is connected to the drawing-tag or is to be grasped by the tongs) are at a sufficiently high heat for welding, and consequently if the plate be left in the furnace until the edges throughout its entire length are brought to the welding heat some portion or portions are very liable to become overheated, to become too soft, or to be burned, as above referred to.

*    *    *    *    *    *    *    *    *    *

"Another practical difficulty arising from the introduction of the plates into the same end of the furnace from which they are withdrawn is the interference between the gangs of men who handle and introduce the plates, known as the 'feeders,' and the 'welder,' who controls the heat of the furnace, determines the time of heating, and superintends the withdrawal of the plates, both of whom must be stationed and work at the same end of the furnace. This interference necessarily delays the work, especially where several plates are heated in the furnace at the same time, and as soon as one is withdrawn another is introduced. Furthermore, this charging of plates in at the same end of the furnace from which they are withdrawn renders it impracticable to employ mechanical charges for feeding the plates to the furnace.

*    *    *    *    *    *    *    *    *    *

"It is the object of my invention to overcome the objections, defects, and difficulties hereinbefore enumerated; and to this end the invention consists, generally stated, in the method of making butt-weld pipe or tubing from thin flat plates or strips of metal, hereinafter more fully described and claim-

ed, by introducing the strip or plate longitudinally through the rear end of the furnace into the furnace-chamber, raising its edges to substantially uniform welding heat throughout its length, and drawing it by the end first introduced from the furnace at the opposite end thereof and through a welding-bell or bells, and thereby forcing the opposite edges of the plate into abutting and welding contact."

The claims of the patent are as follows:

"(1) The herein-described method of forming butt-weld tubing from flat plates or strips of metal, which consists in introducing a flat plate longitudinally through the rear end of a furnace into a furnace-chamber, raising its edges to substantially a uniform welding heat throughout its length, and drawing it by the end first introduced through the opposite or front end of the furnace and through a welding-bell, and thereby forcing its edges together and welding it into tubing, substantially as set forth.

"(2) The herein-described method of forming butt-weld tubing from flat plates or strips of metal, which consists in trimming and bending one end of a plate so as to form a raised tongue thereon, inserting the plate with its raised tongue end foremost through the rear end of the furnace into the furnace-chamber, raising its edges to substantially a uniform welding heat throughout its length, and drawing it by the raised tongued end through the opposite or front end of the furnace and through a welding-bell, and thereby forcing its edges together and welding it into tubing, substantially as set forth.

"(3) The herein-described method of forming butt-weld tubing from flat plates or strips of metal, which consists in feeding a series of flat plates successively side by side through the rear end of a furnace into the furnace chamber, raising their edges to a welding heat therein in the respective positions in which they rest when so fed, and drawing them successively by the ends first introduced from the opposite or front end of the furnace and through a welding-bell, and feeding in a fresh or cold plate in line with the one being withdrawn, substantially as set forth.

"(4) The herein-described method of forming butt-weld tubing from flat plates or strips of metal, which consists in feeding a series of flat plates successively side by side through the rear end of a furnace into the furnace-chamber, raising their edges to a welding heat therein in the respective positions in which they rest when so fed, and drawing them successively by the ends first introduced from the opposite or front end of the furnace and through a welding-bell, and feeding in a fresh or cold plate in line with the one being withdrawn, and before it has been entirely withdrawn, from the furnace, substantially as set forth.

"(5) The herein-described method of forming butt-weld tubing from flat plates or strips of metal, which consists in trimming and bending one end of the plate so as to form a raised tongue thereon, inserting the plate with its raised tongue end foremost through the rear end of the furnace into the furnace chamber, raising its edges to substantially a uniform welding heat throughout its length, grasping the raised tongued end by means of tongs or similar devices, and drawing the plate thereby through the opposite or front end of the furnace and through a welding-bell, and thereby forcing its edges together and welding it into tubing substantially as set forth."

The defenses were nonpatentability, by reason of lack of invention, and noninfringement. The court below sustained the first defense, and the second defense of noninfringement was, therefore, not considered. The opinion of the learned judge in support of his conclusion is elaborate, and covers the case so completely, that we adopt the same as the opinion of this court. It is as follows:

"Buffington, J. This is a bill filed against Spang, Chalfant & Co. by the National Tube Co., assignee of patent No. 581,251 granted April 20, 1897, to Peter Patterson for manufacturing tubing. Infringement of all claims is charged. The defenses are invalidity of the patent and noninfringement.

135 F.—23

The patent concerns pipe making. In that art long strips of wrought iron or steel of suitable width are brought to a proper welding heat. In one method the strips are drawn through a flared or bell-mouthed ring which gradually rounds the strip into diminishing circular form as it passes through its lessening diameter and the bell at the outer and smallest opening forces the edges to abut and weld. This method is called butt-welding; its product butt-weld pipe. In the other method the sides of the strip are first skived or beveled and then passed over a mandrel and through rolls whereby the edges are made to overlap and weld. This is called lap-welding; and the product lap-weld pipe. Butt-weld pipes were successively made prior to the patent in suit, which was for an improvement in one step of the process and did not, it will be observed, create a new article of manufacture. The product of the patented as well as the former process continues to be styled butt-weld pipe. In the art antedating the patent the high heat required to bring the strips to a butt-welding point was secured by the use of reversible reverberatory furnaces which ran approximately 3.000°. Under such high heat the strips required rapid handling, since if not withdrawn at the melting point the iron was burned. As these strips were fed in at the front of the furnace and the ends first subjected to heat were last withdrawn it was manifest that when a welding heat was reached at the end last introduced the other end might by the time it was withdrawn be burned. This danger was lessened by furnace construction, by which through graduated valves the heat was in a measure, if not indeed wholly controlled, for as Mr. Converse, complainant's president, said: 'My own impression is that the different exposure—that the difference of time of exposure of front charging was compensated by heat distributed in the furnace.' It was also known that to successfully weld a strip its center should not reach as high heat as the edges, for a stiff center maintained the form or contour of the pipe under the strain of welding the abutting edges. In securing this result it was recognized that it was preferable to allow the strips to remain in the position in which they were originally charged and withdraw them from that point rather than to shift them to the common withdrawing one. The advantage of this stationary or quiescent position of charging is due to the fact that when the cold strip is introduced it speedily absorbs heat from beneath, and as this absorbed heat is added to by the heat from the furnace arch or body above it the strip soon becomes superheated and returns its heat to the strip of the furnace floor beneath it. This absorption of heat from the strip by the floor tends to keep the central line of the strip relatively cooler and give it that stiff body which aids in welding the abutting edges. If, however, the strip were moved from its original position to one which was and had been subjected to the heat radiating from the furnace arch, the strip instead of losing heat to the floor at this point of the process would absorb more from it. The advantage of quiescent heating was known and appreciated and its advantages sought for through the agency of a shifting or movable working bench. An example of this is seen in the table of Patterson himself shown in patent No. 416,374, whereby he sought to 'overcome the necessity of handling the plates after they are placed in the furnace and so provide for the more regular and even heating of the plates,' through the agency of a movable work bench. Another practice in the prior act which deserves careful consideration in forming a just estimate of the patent in suit was the means used to draw the strips from the furnace and through the welding-bell. The prior practice until a short time before the patent in suit was by means of a draw bench and a 'tang' or drawing rod and is described by Patterson in his patent No. 416,374, before referred to, as follows: 'The most approved method of making this butt-weld tubing heretofore practiced has been to weld a rod to the end of the plate from which the tube is to be formed and bringing this plate to a welding heat in a suitable furnace and draw the plate by means of said rod through a bell shaped die, generally termed a "bell," the sides of the plate being turned over so as to bring it to tubular form, and the edges of the plate being butted and compressed together within the die and so welded. In welding tubing in this manner a long draw bench has heretofore been employed, the draw bench being mounted stationary before the mouth of the welding furnace, and the draw

bench having at its forward end a holder to support the welding die or bell, and a chain traveling in said draw bench, and a buggy running on a track on the draw bench and acting to draw the blank through the die by first engaging with the "tang" or drawing rod secured to the tube-blank, and then engaging with the traveling chain and so drawing the blank through the welding die or bell.' Moreover, prior to the patent in suit the general principles and advantages of charging metal at the rear of a furnace were known and appreciated. It was seen that it prevented congestion at the furnace front and that the general benefits naturally incident to a continuous straight-away process followed. Front charging of billets and slabs was the common practice, but about 1870, when the use of Siemen's regenerative furnaces in pipe-making eliminated coal smoke from such furnaces rear charging was and has since been followed in heating skelp for lap-welding. With the exception, however, of the Crane practice referred to later no step toward rear charging was taken in butt-weld furnaces. The reason for this seems apparent in the limitations imposed by the use of tangs, since it was impracticable, if not indeed, impossible to charge a strip from the rear of a furnace with a tang welded to its nose. In the first place the tang end could not be slid along the furnace floor, and even if it could have been it would have been so hot it could not be handled to shift the strip or to pass it through the welding bell and attach it to the draw buggy. Not only was the tang an impediment to back charging, but it was an expensive factor in that it required a preliminary heating and the labor of welding it on and shearing it off. The desirability of using tongs instead of tangs was appreciated, but the conditions under which tongs had to be used were such that it was a difficult thing to devise them. In the first place they had to operate at long range; second, their size must be such that the gripping end could pass through the welding-bell, and third their grip must be such that they could stand the jerk or strain of instantaneous engagement to a chain moving at the rate of several hundred feet a minute and at that rate grip and start a strip of iron twenty-five feet long and draw it at a rapid rate through the welding-bell. From these conditions and difficulties it will be apparent that the use of tangs and the lack of tongs would completely prevent any attempt at back charging. This is clearly and forcibly shown in the affidavit of Saunders filed in the Patent Office in the application for the present patent and the testimony of Simpson in the present case. Saunders' affidavit was: 'Up until within a short time of the invention made by Mr. Patterson, the almost universal custom in making butt-weld tubing or drawn tubing was to employ what were termed "drawing tags," which were secured to the front end of flat plates, the plates being pushed into the furnace from the same end as that from which they were withdrawn. * * * It would have been impracticable to introduce them from the other end for two or three good reasons, the principal one being that the tag would have become heated in passing through the furnace, so that the welder could not grasp the tag and so manipulate the plate in the furnace, and furthermore, that the tag would be liable to catch on the bottom of the furnace and tear up the bottom, or direct the plate out of its proper course. I have never known it to be attempted. * * * The use of tongs for drawing the plate from the furnace was practically only experimental up until within a short time of Mr. Patterson's making the invention, as it was difficult to provide tongs which would hold sufficiently well to the plate, and yet pass through the welding-bell.' The testimony of Simpson was: 'Q. 12. How long did you continue to use the bell and the tag-welded plate as a means of handling the plate and drawing it through the bell as the principal way of making your pipe? A. Up to about 1893; that is, up to the time I left in 1893. Q. 13. Up to that time had you known of any better way in practical use of making butt-weld pipe than by welding the tag onto it, as you have described? A. No.' The difficulty in devising such tongs is stated by Doyle: 'The difficulty in devising such tongs lies in the fact that they must be slender enough to allow their passage through the bell, and at the same time have sufficient strength for the required drawing of the plate through the bell.' A careful examination of the proofs in this case, and in that aspect we may say they are practically unquestioned, satisfies us that the absence of such tongs was

a prohibitive step to the use of back charging methods and in our judgment the conclusions drawn by Dr. Sellers, an expert, and Henderson, a practical superintendent, are justified by the proofs in this case. The former says: 'A. The chief, and I might almost say the only, impediment in the way of back-charging was the non-invention of any means of drawing the plate out of and through the bell except by means of a tag welded to the bar ready for the operation of passing this tag and the pipe through the bell, and is now done by the ingenious tongs that have been gradually evolved to take the place of the welded or otherwise attached tag, the use of which necessitated the front-charging method.' The latter says: 'A. The reason for not charging skelp into the rear end of butt-welding furnaces was the absence of a suitable device with which to withdraw the flat sheet from the front end of the furnace; in other words, we were unable to secure a pair of tongs over which we could slip the welding-bell and which would be at the same time slender enough and having sufficient tenacity when gripping the sheet of iron to pull the same through the welding-bell without slipping off and allowing the sheet to remain in the furnace, thus causing what we would term a "cobble." The whole question of back-charging hinged on the question of a suitable appliance for withdrawing the sheet from the front end of the furnace, and until this was accomplished we used what is commonly known as the "tang method" of making butt-weld pipe.' Indeed, the fact that no tong has yet been devised for handling small-sized pipe, say an eighth to a quarter of an inch, and that they continue to be made by the front-charge method is illustrative of what for a time restricted the larger sized pipes to front-charge furnaces. And that the tongs were the lacking factor is shown by the practice in lap-weld furnaces. There tongs had been devised by which the skelp could be satisfactorily gripped, and back-charging was therefore practiced. But the tongs that were suited to that practice and to the relatively moderate cherry-red heat there employed, would not meet the requirement of grasping strip raised to the melting point required in butt-welding. The difference is set forth by the witness Henderson, who says: 'A. The condition of the flat sheet or strip of metal when drawn through the skelping box from the front end of the skelping furnace, was what was commonly known as "cherry-red heat." The skelping tongs which grasped this plate had an entirely different work to perform as compared with a pair of tongs suitable for grasping a flat sheet or strip of metal heated to high welding heat which were to be drawn through a small welding-bell. In the first instance the tongs were quite short and were mounted on a buggy: Sufficient pressure could be put on these tongs by the use of a pulley hook, which would make them grasp the plates tenaciously enough to allow them to be drawn through the skelping die while in the welding tongs, which of necessity had to be long and slender. Great trouble was experienced in securing tongs which would retain its hold on the plate when pulled through the welding-bell.' But in spite of this drawback the art was not without its development in back charging of strips for butt-welding. What is known as the 'Crane method' was in use previous to the patent and is still used as a successful method of butt-welding by back charging. In this practice the furnace was open at the front, the welder and front slider worked from that point and together moved the plate from the second position forward to the final working point. At one side it had a stationary work bench provided with bell, buggy and movable chain and the strips were charged by a stationary mechanical charger placed at the diagonal corner from the work bench. Instead of a reversible furnace, one in which the heat was generated on one side and the exit flue on the other was used. A picker man or rear slider was stationed at the rear opening who moved the plate from its first to its second position, from which point they were moved to the third and fourth position by the front slider and to the fifth or final position by the welder. This device showed the application of the general principle of back charging to the butt-weld art; as an incident to that method it showed the uniformity of heating obtained by opening the rear end and thus avoiding the heat non-uniformity which necessarily came from a closed rear furnace section; it also incidentally showed equality of time of heat subjection. Not only was the end of the strip first introduced first withdrawn, but the whole

strip as it was shifting toward the hotter working side was uniformly sub-jected to the higher heat zones horizontally.

"In this state of the art the idea occurred to Patterson, the patentee, to dispense with tangs, charge the strips at the back of a butt-weld furnace, allow them to remain in such initial position, grip them with tongs and with-draw them therefrom at the front of the furnace by means of his shifting draw bench. This constitutes his process. It was embodied in a furnace built at McKeesport in October, 1894. That furnace differs from the Crane method in this that the plates are initially charged in the position from which they are finally drawn. In that respect Patterson himself says: 'My under-standing of the Crane apparatus is that a flat plate or strip of metal is charged in between a plate and the bridge wall, and when so charged into the furnace they are moved laterally to the place of withdrawal. With this exception the Crane apparatus is practically the same as the apparatus at McKeesport.' Subsequently, to wit, on March 18, 1896, the National Tube Works Company, as assignee of Patterson, made application for the patent in suit which was granted April 20, 1897. Did this device involve patentable novelty? In considering that question we naturally inquire of the steps or means through which an invention is reached. A long series of futile ex-perimental efforts resulting in a solution in some unthought of way sometimes serves to aid in showing inventive character. The present case is singularly free from any effort of that kind. The plan of rear charging simply occurred to Patterson several years before he reduced it to practice. It seems to have come to him and been suggested by the use of his movable draw bench as a means of increasing production. He says: 'A. On December 3, 1889, I was granted a patent No. 416,374, for an apparatus for welding. This invention covers the movable draw bench, and it was when we put this draw bench in operation and were experimenting with it to increase our production in butt-weld tubing, that the thought of charging the plates into the rear of the furnace occurred to me. It was not more than a thought at the time, and as time went on it would return to my mind, especially when we were strug-gling with the difficulties of getting uniform heat on the plates for the making of butt-weld tubing. I have a distinct recollection of telling Mr. Pierce in 1893, who was the manager of the pipe mills of our company at that time, of my idea of making pipe by charging the plates from the rear of the fur-naces, but Mr. Pierce did not give me very much encouragement and time went on, and it was not until the fall of 1894 that I was permitted to have a furnace built in which to carry out my idea of back charging.' Referring to his talk with Pierce he says: 'A. My conception was to charge the plates into the furnace on certain lines, and I so disclosed it to Mr. Pierce. I also stated that if allowed to build a furnace of that kind that I would use my movable draw bench, so as not to move the plates in the furnace, as was the custom in front charging.' The conception, whatever its character, was then complete. There were reasons why it remained unused so long. The tang method prevented its use, and Mr. Converse objected to the heavy ex-penditure involved in furnace reconstruction and in the adoption of a process which involved dividing the responsibility for furnace control between the charger and the welder. This latter objection proved unfounded, and when permission was received to construct a back-charging furnace complete plans were drawn, the furnace constructed according to them and at once put in operation without any experimental work. Mr. Converse says: 'I remember ordering the change of this furnace and seeing the work done and afterwards hearing from Patterson other ideas he had which included this back charging. I do not recall any other objection than our heavy expenditure which would be incurred by such a radical change other than the taking away from the old welder to a great extent the control of charging his furnace. I refer more particularly not to means of charging, but to the quantities and time.' In view of these facts and statements it seems to us that the idea of back charging simply and naturally occurred to Patterson as a means of using his patented movable draw bench and thereby increasing production. This is strengthened by Mr. Converse's estimate of the invention. He says: 'My own impression is that * * * the great advantage derived from the back-charging methods as against front-charging methods were far better facilities

for charging without interrupting the welder or interfering with his work—continuity of presentation, and as I have before stated, the enormous increase in production for heat and labor unit.' As confirmatory of the view that the improvement in method here involved was mechanical and commercial and did not call into exercise inventive genius, it will be noted that near this same time other persons had thought of back charging for butt-welding and that they were seeking to devise tongs as a means of securing it. The difficulty was not in the lack of conception of back charging, but in the lack of tongs to make its adoption possible. These facts are to be regarded not as anticipations or prior conception to Patterson, but simply as evidencing the fact that the back charging of a butt-weld furnace was a mechanical conception which naturally occurred to other persons near the same time and without knowledge of the others' actions. Thus Doyle, the manager of the respondent's works, says: 'When I went to Spang, Chalfant & Co. the condition of their butt-weld pipe making was so very far behind the method used in other mills, we started in at once to make improvements in the method of manufacture. I reduced the number of heatings required to make a complete tube from 7 to 5; again from 5 to 3, still making the tube by the old common tang-welding process, it being still unsatisfactory; in 1894 we put in a bell-welding furnace. It being found unsatisfactory, on account of the expense of making and welding on the tangs, I began work on devising suitable tongs to take the place of the tang, knowing that when we were able to get satisfactory tongs we would then have to charge from the rear of the furnace, as that would be a more convenient way of working. Along in 1895 I succeeded in devising satisfactory tongs; showed the tongs in operation to Mr. George A. Chalfant, general manager of the works, and explained the advantages of the tongs in charging from the rear over the tang method then in use.' George A. Chalfant, one of the respondents, testified as follows: 'Q. 22. In April, 1896, when you began to charge your butt-weld furnace at the rear, had you ever heard of the Patterson patent in suit, or of its introduction at the complainant's works at McKeesport, or elsewhere? A. I most certainly did not. * * * Q. 7. When did you first hear of charging butt-weld furnaces at the rear and drawing them at the front? A. It was in the fall of 1888. Mr. Doyle said to me we ought to make pipe by charging the skelp or plates in at the back of the furnace and drawing them out welded pipe at the front of the furnace. The only thing that would be necessary would be suitable tongs to draw out the hot skelp. * * * Mr. Doyle came to the office one day in the fall of 1895 and asked me to come up to the mill, that he had something he wanted to show me. I went up to the mill. He showed me a pair of tongs that he had made for drawing skelp out of the front of the furnace. He had made an opening in the back of the welding furnace and charged some plates in the back of the furnace for making inch and a quarter pipe. When they were heated to a welding heat he drew them through the bell at the front of the furnace with these tongs that he had shown me and made inch and a quarter pipe. I said, "You have succeeded, get ready to make pipe by back charging."' The significance of facts of like general character was referred to in Haslem v. Pittsburg Plate Glass Co. (C. C.) 68 Fed. 481, where it was said, citing Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438: 'As confirmatory of the view that this improvement did not call into exercise inventive genius, reference may be made to the fact that even, if priority of conception could be accorded, to Haslem at or about the same time three skillful mechanics—namely, Haslem, Sleeper and Edward Ford—acting independently of each other, suggested the duplication of the orbicular beam in the Belgian machine at the Jeffersonville Works, and the application of the reverse crank movement to the beam. This circumstance furnishes persuasive evidence that the change was obvious to the skillful mechanic.' A vast amount of testimony has been taken to show the value of the back-charging practice and of its advantage over former methods. We so regard it. It is a natural continuous straight-away method and like all such improved methods of continuous handling it avoids congestion of workmen, allows steady, as compared with intermittent work, it utilizes the same heat and labor to produce a larger product. We are also satisfied that by a quiescent charging better heat results are obtained

and less scrap made. We are also satisfied that further use of the practice has developed advantages additional to the two which alone the patentee had in mind and referred to in the application, viz., even longitudinal heating and separation of the working force. But conceding such difference and progress the fact still remains that the step here made was one of gradual and to be expected progress which marks every great and therefore progressive industry. In that advance the tongs and movable draw bench afforded scope for inventive genius and presumably have procured protection to those who devised them. The principle of back charging was not Patterson's invention. Now why should the general principle and practice of back charging which tongs have made available for butt-weld heating be monopolized to prevent their use for that purpose? Nor was the principle of quiescent charging his. He simply utilized these principles by employing them in the only way they could be used by means of improved tongs and shifting draw bench and in a way the draw bench naturally suggested. That this use disclosed new and unexpected advantages may be conceded but it is not everything that is novel and useful that is patentable. Many processes and methods have proved exceedingly valuable in manufacturing that have not been patentable. To use, with some change, the language of another (Atlantic Works v. Brady, 107 U. S. 192, 2 Sup. Ct. 225, 27 L. Ed. 438), we may say that the development of this, as of every great industry develops a constant demand for new methods, which the ordinary skill of those versed in such branch has generally been adequate to devise, and which devising is the natural outgrowth of such development. Each forward step prepares the way for another, and to burden a great industry with a monopoly to each improver for every step thus made, except where marked by an advance greater than mere progressive skill, is unjust in principle and hostile to progress. In reaching the conclusion of the invalidity of this patent we are not unmindful of the prima facies to which its issue entitles it. But the prima facies is necessarily affected by the fact that the record discloses neither in the specification of the patent or in the action of the examiner any reference to the Crane practice. Indeed the proofs show it was not known to Patterson. His specification contains no reference to it. Indeed it is conceded that if literally construed and not restricted to the specific method disclosed Crane's method would infringe at least one claim.

"In concluding we remark that while the testimony of the experts in this case shows the thermal and operative advantage of back charging, a conclusion to which we agree, and while the process is simple, effective and economic, we are nevertheless satisfied it involved no invention. In our judgment it was but the steady evolution and development of advance incident to an industry where competition pushes progress to constant change. In this advance the movable bench and the successful tongs were material factors. Back charging was the natural step in advance when these factors were provided. So holding we are of opinion the patent is invalid and the bill must be dismissed."

The decree of the court below is affirmed.