## SCHERZER ROLLING LIFT BRIDGE CO. v. CITY OF CHICAGO et al.

(District Court, N. D. Illinois, E. D. November 24, 1924.)

No. 1479.

**1. Patents ☜328 — 735,414, for double-deck bascule bridge, held invalid for lack of invention.**

The Scherzer & Kandeler patent, No. 735,-414, for a double-deck bascule bridge, *held* merely the extension of the principles of the prior art to double-deck bridges, requiring only the mechanical skill of a competent bridge engineer, and void for lack of patentable invention.

**2. Patents ☜26(2)—New combination of old elements, to be patentable, must produce new result as effect of the combination.**

To be patentable, a new combination of old elements must produce a new and useful result, which is the effect of the combination, and not merely the aggregation of old results.

**3. Patents ☜328—735,414, held not anticipated.**

The Scherzer & Kandeler patent No. 735,-414, for a double-deck bascule bridge, *held* not anticipated, nor invalid for failure of patentees to use diligence in reduction to practice.

**4. Patents ☜92—Joint invention.**

When a claim covers a series of steps, or a number of elements in a combination, the invention may be joint, though some of the steps, or some of the elements, may have come as the thought of but one.

In Equity. Suit by the Scherzer Rolling Lift Bridge Company against the City of Chicago and the Great Lakes Dredge & Dock Company. Decree for defendants.

Cassels, Potter & Bentley, Barry Gilbert, and Geo. I. Haight, all of Chicago, Ill., for plaintiff.

Dyrenforth, Lee, Chritton & Wiles, Geo. A. Chritton, Russell Wiles, and Francis X. Busch, Corp. Counsel, all of Chicago, Ill., for defendants.

LINDLEY, District Judge. Plaintiff, being the assignee of the original patentees and owner of letters patent No. 735,414, issued August 4, 1903, brought this suit, alleging infringement of the patent by the construction of a certain bridge by the defendants in 1920 across the Chicago river at Michigan avenue, commonly known as the

Michigan Boulevard bridge. The patent has expired since the suit was begun.

The defendants' position is that the alleged invention is void, as not involving patentable invention or novelty, and as not being the result of the joint effort of the two original patentees, that the prior art anticipates the invention claimed by plaintiff, and that, if the patent be valid, there has been no infringement.

[1] The plaintiff relies upon claims Nos. 1, 3, 4, 6, 8, and 9 of the patent, which are as follows:

"1. A bascule bridge span, consisting of trusses and two decks or floors, arranged one above the other."

"3. A double-deck bascule bridge, comprising trusses, a lower bridge floor located at the level of the lower chords of the trusses, and an upper bridge floor located at the level of the upper chords of said trusses.

"4. A double-deck bascule bridge, comprising a lifting span having upper and lower floors, and a bridge approach having two corresponding floors or roadways, the span floors being arranged to project towards the approach beyond the supports of the span, and to move downwardly away from the approach floors or roadways in the lifting of the span."

"6. A double-deck bascule bridge, comprising a lifting span provided with two decks, located one above the other, and a bridge approach having two corresponding floors or roadways."

"8. A double-deck bascule bridge, comprising a lifting span provided with two decks and a bridge approach having two corresponding floors or roadways, the upper one of which extends beyond or overhangs the lower one.

"9. A double-deck bascule bridge, comprising a lifting span provided with two floors, located one above the other, and an approach having two corresponding floors or roadways, the ends of the span floors which meet the approach floors or roadways being extended past the support by which the span is sustained, and the end of the lower span floor, which meets the lower approach or roadway, being extended past the adjacent end of the upper span floor to a point outside of the path of the said end of the upper span floor."

In the bascule type, the support of the bridge is upon the shore, and a long arm stretches therefrom over the stream to be bridged. This is counterbalanced by a shorter shore arm, which is counterweighted, and when the bridge opens the streamward end ascends and the shoreward end descends. The fulcrum of this counterbalanced bridge is either a fixed trunnion, or pivot, or a movable fulcrum in the form of a rocker. The patent in suit applies to double-deck bascule bridges, and its drawings illustrate bridges of such character swinging vertically upon a rolling or rocker fulcrum. However, the plaintiff rightfully insists that the description and claims are sufficient to embrace, not only double-deck bascule bridges rolling upon a rocker fulcrum, but also those bridges which pivot upon a fixed fulcrum.

Single-deck bascule bridges have long been known to the profession of bridgebuilders, and such bridges were erected and in use in the city of Chicago for a number of years prior to the issuance of the patent. A former patent issued to Scherzer for a single-deck bascule bridge. Double-deck bridges of other types are likewise old in the art and known to the profession. Swing bridges of double-deck type have been in operation for many years. The truss described in the patent and embraced in defendants' structure is also old. In the plaintiff's patent all these old practices are combined in the double-deck bascule bridge therein described, and unless this combination results in something novel, representing more than mere mechanical skill in aggregation, or unless there is some new element involved and included in the claims constituting patentable invention, the patent cannot stand. Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241.

The only other elements which plaintiff claims as a part of its invention are, first, the position of the two decks, the lower floor being placed approximately in the plane of the lower chord of the truss, and the upper floor being placed approximately in the plane of the upper chord; second, the location of the trunnion in such a position as not to interfere with the traffic on the lower deck; and, further, the construction of the projecting arms of the shore end of the bridge of different lengths, the upper being shorter than the lower, thus permitting the two arms to descend in an arc, without interfering with the projections from the approach intended to connect with the bridge.

It seems apparent that one who has constructed single-deck bascule bridges, confronted with the necessity of such a bridge with two floors, would easily and naturally adapt the prior art to the necessity with which he was thus confronted, and with the ordinary mechanical skill of a bridgebuilder extend the principles of the prior art to the double-deck bridge. The witnesses for the defense have so testified. But, independent

of their testimony, an examination of the bridges previously constructed and of the bridge in question, as shown by the exhibits and by the patent, is convincing to the court that the combination of the principles of the single-deck bascule bridge, the truss, and the double decks of swing bridges in a double-deck bascule bridge is merely the demonstration of mechanical skill upon the part of a competent or efficient bridge engineer. Furthermore, the length or arrangement of the respective decks or of the shoreward projecting ends does not in any wise appear to be novel, but merely the working out of the details by the engineer. The same should be said of the location of the fulcrum, and of the choice between trunnion and rolling fulcrum types. The choice of these details seems to the court to be one of personal judgment upon the part of the engineer, in applying certain well-known physical principles to the exact condition confronting him.

The history of bridgebuilding as shown by the evidence supports these conclusions. Professor Burr, confronted with the problem of constructing a memorial bridge across the Potomac river, preserving a harmonious appearance, but providing for two decks and a draw, in January, 1900, submitted plans to Congress for such a bridge. True, he placed the trunnion in such position that it narrowed the lower deck, whereas Scherzer's bridge did not produce such result; but he did this because the lower deck was not required to be of any greater width than as designed. The engineers of the city of Chicago designed a double-deck bascule bridge in March, 1901. These designs by different engineers in different places are mentioned, not as examples of priority, but as proof of the fact that the adoption of such a design and the application of same to necessitous conditions is not invention, but merely the exercise of the skill of the competent engineer. National Tube Co. v. Spang (C. C.) 125 F. 22, affirmed in 135 F. 351, 68 C. C. A. 59.

The relative horizontal location of the trunnions and counterweights may affect the width of the roadways, and their horizontal and lateral locations will determine the respective lengths of the approaches and the respective lengths of the arms. A rocker pivot or trunnion may permit all of the counterweight to be placed below the floor, thus preventing interference with traffic; but it certainly cannot be claimed that there is any novelty or patentable invention in placing these trunnions, pivots, and counterweights at any one particular point. The location of the floors with respect to the two chords

of the truss is within the same proposition. Every truss is, in a sense, double-deck, for the reason that, irrespective of the location of the floor, it must carry the dead weight of the upper chord and the dead weight of the lower chord. Where each chord carries, in addition to this dead weight, a floor for traffic, the stress is increased, but the principle of construction is not fundamentally modified. Single-deck bascule bridges were built by Scherzer across the Chicago river in 1893 and 1895. In one of them the floor was in substantially the same plane as the upper chord of the truss, and in another the floor was in substantially the same plane as the lower chord. The same kind of truss was used in each. In the patent in suit, Scherzer merely adapted the construction of two single-deck bascule bridges to one bridge of the same type with double decks. He placed one floor in the plane of the upper chord and one in the plane of the lower chord. So far as the placement of the decks is concerned, his was merely duplication. Invention does not lie in such construction. Dunbar v. Meyers, 94 U. S. 187, 24 L. Ed. 34; Slawson v. Street Ry. Co., 107 U. S. 649, 2 S. Ct. 663, 27 L. Ed. 577.

The court is of the opinion that, in view of the prior art as it had been developed, the designing of the bridge as patented by plaintiff, of the bridge as built by defendants, of the bridge as proposed to be built across the Potomac by Burr, and of the bridge designed by the city engineer in Chicago in 1901, was in each instance merely the exercise of mechanical skill of competent engineers, who, taking into consideration the bridge to be built, the quantity and character of the traffic to be carried across the stream, the quantity and character of the traffic to be carried up and down the stream, symmetry of design, the character and height of the banks of the river, the stresses of the various loads to be carried, and the other existing material elements that a bridgebuilder must consider, adapted to this situation the constructions that had been used and tested, without producing anything of such character as to constitute patentable invention.

[2] "A new combination, if it produces new and useful results, is patentable, though all the constituents of the combination were well known and in common use before the combination was made. But the results must be a product of the combination, and not a mere aggregate of several results, each the complete product of one of the combined elements. Combined results are not necessarily a novel result, nor are they an old result ob-

tained in a new and improved manner. Merely bringing old devices into juxtaposition, and there allowing each to work out its own effect without the production of something novel, is not invention. No one, by bringing together several old devices without producing a new and useful result, the joint product of the elements of the combination and something more than an aggregate of old results, can acquire a right to prevent others from using the same devices, either singly or in other combinations, or, even if a new and useful result is obtained, can prevent others from using some of the devices, omiting others, in combination." Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241; Reckendorfer v. Faber, 92 U. S. 356, 23 L. Ed. 719; Pickering v. McCullough, 104 U. S. 317, 26 L. Ed. 749; Foos v. Springfield, 49 F. 642; 1 C. C. A. 410; Mott Iron Works v. Standard Co., 53 F. 823, 4 C. C. A. 28; Perfection Cleaners Co. v. Bosley (C. C.) 2 F. 577.

Although recognizing the full force of the rule of the presumption of the validity of the patent, and of the rule requiring proof to the contrary to be clear, convincing, and practically beyond reasonable doubt, the court is impelled, in view of the evidence submitted, to conclude that the plaintiff's patent is void for want of patentable invention.

[3] In view of the court's position, the other defenses urged by defendants become immaterial; but, inasmuch as there may be a review, the court feels inclined to state its position at some length. If the plaintiff's patent constitutes invention, the court is of the opinion that it was not anticipated by the prior art. The plaintiff's assignors were the first to design a bridge of the type in question. It is contended, however, that they were not diligent in reducing the same to practice. Burr filed his design with the War Department in the spring of 1900, and it is contended that thereby he reduced to practice before the plaintiff's assignors made their application for patent, and that they, by their failure to exercise diligence, lost their right to patent as against the prior art.

The evidence discloses that the plaintiff's assignors began to design a double-deck bascule bridge for La Salle street in Chicago about April 17, 1899. They spent money and time in perfecting their concept in at least seven months out of the remaining months of that year, and in January, February, and March of the year 1900, and at various other times between June 4, 1899, and January, 1901, they were engaged in preparing in Chicago a similar design for a bridge to be erected at St. Johns, in Nova Scotia. The patentees spent for wages of draftsmen in these connections during that time about $1,400. They published a book of photographs and drawings, including the La Salle street design, and sent the same, with complete descriptive matter, to numerous colleges, railways, and engineers, on January 31, February 1, and February 2, 1901, and to others at various other times thereafter, aggregating over 200 in number. Among those to whom books were sent was Burr, to whom one was forwarded on February 9, 1901. The same design was filed with the Corps of Engineers of the Army in April, 1901. On April 26, 1900, the plaintiff's assignors wrote Burr, suggesting adoption of plaintiff's bridge in Burr's plans.

Working upon a design for a bridge in an office from time to time, coupled with the planning that must have gone into the same, the printing of these designs, the circulation of the same among colleges and government officials, the designing of two bridges, all apparently without serious interruption, indicate reasonable diligence upon the part of the inventors, which should not rob them of their priority. Furthermore, the court is of the opinion that there was no reduction to practice by Burr. The bridge he designed was never built. The filing of his design with the War Department, if to be construed as a constructive reduction to practice, goes beyond the limits of what has been determined to be such. See Automatic Weighing Machine Co. v. Pneumatic Scale Corporation, 166 F. 288, 92 C. C. A. 206.

[4] Defendants' contention that the evidence will not support a joint patent is in the opinion of the court not well founded. When a claim covers a series of steps or a number of elements in a combination, the invention may well be joint, although some of the steps or some of the elements may have come as the thought of but one. Quincy Mining Co. v. Krause, 151 F. 1017, 81 C. C. A. 290. The evidence by no means discloses that either one of the patentees alone solved the problem to be dealt with. In that respect it is altogether too meager to destroy a patent granted for a joint invention, upon the ground that it was the invention of only one of the patentees.

In view of the fact that defendants in their bridge adopted the material elements of plaintiff's patent, it follows that, if the court were of different opinion with regard to the character of the original invention, all other contentions of defendants would of necessity be denied; but, in view of the find-

ing that the patent does not disclose patentable invention, the bill must be dismissed for want of equity, at the costs of the plaintiff.