## HIMMEL BROS. CO. v. SERRICK CORPORATION.

### No. 7518.

Circuit Court of Appeals, Seventh Circuit.

Sept. 3, 1941.

H. A. Toulmin, H. A. Toulmin, Jr., and Rowan A. Greer, all of Dayton, Ohio, and Patrick J. Smith, of Indianapolis, Ind. (Thompson,. O'Neal & Smith, of Indianapolis, Ind., and Toulmin & Toulmin, of Dayton, Ohio, of counsel), for plaintiff-appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

MAJOR, Circuit Judge.

This is an appeal from a decree entered October 11, 1940, adjudging plaintiff's Patent No. 1,984,134 valid and infringed by the defendant. The patent, entitled "Structural Member," applied for January 6, 1934, by Fred Himmel and Isidore Himmel, was issued December 11, 1934, and later assigned by the patentees to the instant plaintiff corporation.

Claim 7 is the only one involved in suit. The defenses are non-invention, non-infringement, invalidity of patent for failure to disclaim Claim 5, and that the claim in suit is invalid for lack of foundation in its specification and the lack of any oath to support it. After a careful study of the record we are convinced that the defense of non-invention must be sustained. It will therefore be unnecessary to consider the other defenses. The term "structural member" as used in connection with the patent, refers to a two-ply or laminated metal molding or edge-piece comprising an outer surface of thin, stainless sheet steel. It is used principally for supporting and ornamental purposes as the edgings or trimmings on running boards, hoods and bodies of automobiles, refrigerators, stoves, tables and the like. It is also used as a molding for supporting and holding plate glass windows in store fronts.

The specification filed in connection with the patent application relates in substance that the burnishing power or energy applied to the surface of solid, stainless steel develops heat on the surface which is not readily dissipated because of its low heat-conductivity, and that this heat produces waves and buckles in the stainless steel, thus damaging the finished product. While the patentees state they have other objects in view, the sole object stated is:

"It is an object of this invention, therefore, to overcome the foregoing described disadvantages of an all-stainless steel construction. We have found that this can be accomplished by forming each of such structural members of an outer surface

George I. Haight and M. K. Hobbs, both of Chicago, Ill., and Arthur M. Hood, W. P. Hahn, and Harold B. Hood, all of Indianapolis, Ind., and Edward A. Haight, of Chicago, Ill., for appellant.

member of stainless steel and a backing member of relatively-higher heat-conductivity metal."

There follows a description of one of the ways of carrying out the invention. Briefly, it describes a "structural member" such as a molding or bar with an outer surface member of stainless steel, and an inner or backing member of a metal or alloy having relatively-higher heat-conductivity than the outer member, such as aluminum, copper, bronze, brass or other metal suitable for the purpose. It is pointed out that the structural member illustrated in the drawing shown in connection with the patent has an outer surface member about one-fourth as thick as the inner backing member, their thickness being, respectively about .08" and .032". It is stated that the structural member may be made in various ways, but the one preferred is the simultaneously rolling or pressing the two strips to the desired shape in contact with each other; that it is preferred the outer member be of greater width than the inner member so that the edges of the former may be folded over the edges of the latter, thus serving as a fastening means for the two members and dispensing with the necessity of soldering or welding. It is further pointed out that the pressure of the burnishing wheel used in the burnishing or polishing of the outer member brings the members into intimate contact, thereby affording good heat-conducting means. Thus, the inner member conducts the heat away from the outer member, permitting a rapid burnishing process without burning or causing the outer member to buckle. It is again pointed out that the invention may be carried out in specific ways other than the one described, and that the latter is illustrative and not restrictive.

Originally seven claims were filed, all rejected by the Examiner in view of certain cited prior art patents. The claims were amended and again rejected for the same reason. Subsequently, they were again amended and allowed. Of those allowed, six were product claims and one a method or process claim. The latter—the only one involved in the instant suit, first making its appearance in the Patent Office on August 18, 1934—is set forth in a footnote.[1]

Thus the method claimed consists mainly of two elements, (1) simultaneously pressing together to desired shape an outer member of stainless steel and an inner backing member of higher heat conductivity and folding the side edges of the outer member over the edges of the backing member; and (2) burnishing the stainless steel veneer with a burnishing wheel under sufficient pressure to press the outer and inner member together, whereby the inner member dissipates the heat generated by the burnishing, thereby preventing discoloration of the stainless steel veneer strip.

In support of its defense of non-invention, defendant relies upon a prior public use by the Brasco Manufacturing Company, as well as by the plaintiff itself, and also on certain prior art patents.

■ At the outset it is argued by the plaintiff that we are bound by the facts as found by the District Court in conformity with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. This rule has often been construed and there is no occasion to further discuss it. We are of the opinion that it carries little, if any, weight in the instant matter for the reasons (1) the findings relied upon appear to be conclusions of law rather than findings of fact, and (2) substantially all the testimony in the case was taken by deposition and under those circumstances, the court below was in no better position to judge of the credibility and the weight to be given to the witnesses than this court.

---

[1] The method of manufacturing a sheet-metal structural member comprising: simultaneously rolling or pressing together to a desired shape, an outer surface member of stainless sheet steel and an inner backing member of relatively-higher heat-conductivity sheet-metal with substantially all portions of the juxtaposed surfaces of the outer and inner members closely adjacent each other, and folding the side edges of the outer member over the side edges of the inner member to secure the members together without solder, welding or the like; and burnishing the outer surface of said outer member by a burnishing wheel, the burnishing pressure of said burnishing wheel serving to successively press portions of said outer member being burnished, into intimate contact with said inner member, whereby said inner member dissipates the heat of burnishing from said outer member and prevents buckling, burning or clouding of the outer surface thereof.

It would unduly prolong this opinion to discuss in detail the findings upon which plaintiff so strongly relies. We shall refer to one which we think is typical and which was made in connection with the Brasco prior use. The court found:

"Whatever pertinency the alleged prior use by the Brasco Manufacturing Company of Harvey, Illinois, the alleged prior public use by the plaintiff more than two years prior to the date of the application for the patent in suit; and all other prior use defenses set up by the defendant herein have to the patent in suit, relate alone to the product or article claims of said patent in suit that are not in issue herein and fail to show any prior use by said, the Brasco Manufacturing Company, or prior public use by the plaintiff itself, or by any other, of the method disclosed in said patent in suit and claimed in Claim 7 thereof, the only claim at issue in this action."

Thus, the testimony regarding this prior use was discarded by the court on the theory that it related only to the product claims which were not in suit, and not to the method claim involved. What reason the court had for reaching such a conclusion we are not advised, but, at any rate, we do not regard it as a finding of fact within the purview of Rule 52(a). The answer to the complaint specifically alleged the Brasco prior use as a defense, not only to the product claims, but also to Claim 7. The court, in reaching its conclusion in this respect, evidently relied upon plaintiff's argument that counsel for the defendant admitted at the hearing that the depositions concerning the Brasco prior use were not pertinent to Claim 7. We are of the view that the language used by counsel is not susceptible of such a construction. Suit was brought upon Claim 5, a product claim, in addition to the one now in suit. Defendant caused depositions to be taken regarding the Brasco prior use. At the commencement of the trial, plaintiff stated that it would rely solely on Claim 7. Defendant insisted that inasmuch as it had taken its depositions as to Claim 5, that that claim should be kept in issue and its validity determined. The court thought, and properly so we think, that it was without authority to require plaintiff to proceed in this manner, and consequently the case was tried and decided solely as to Claim 7. The fact that the defendant, in taking depositions, had in mind and directed its efforts chiefly at the product claim, does

not, in our opinion, preclude it from relying upon such testimony in defense of the method claim in suit, provided, of course, the testimony discloses the method employed by Brasco. While the testimony describes the Brasco product which it is contended invalidates Claim 5, the product claim, the testimony also discloses the method by which Brasco's product was manufactured. As stated, this prior use was pleaded as a defense to all claims. The testimony concerning it is in the record. We know of no reason why that part of the testimony relevant to the method employed by Brasco should not be considered, nor why defendant is precluded from relying upon it as a defense to the method claim in suit.

It is not questioned by the plaintiff but that the Brasco Company in 1931, manufactured for the Vitrolite Company a structural member of laminated stainless steel and mild steel. The first order was placed in January of that year. This order specified an outer layer of Monel metal.

A second order was placed on April 27, 1931, for 20,000 feet of molding for table tops, using a rolled steel backing member and a stainless steel outer layer, which was manufactured and shipped in May, 1931. The same equipment and method were used in the utilization of stainless steel as the outer member as had been used when the outer member was composed of Monel metal. The mild steel inner member and the stainless steel outer layer were separately formed to the desired shape. They were then assembled and the outer member clinched over the inner member. No welding or brazing were used. After the two members had been assembled, the stainless steel portion was polished on a buffing wheel. It will be noted that Brasco used a higher heat-conductivity metal as a backing for the stainless steel. The only distinction which we are able to perceive between the method employed by Brasco and that described in the instant claim is that the latter calls for the rolling or pressing together of the two parts simultaneously, while Brasco formed the two parts separately and then placed them together before polishing. Evidently the dissipation of heat during the burnishing or polishing operation took place during the Brasco process in the same manner as it did during the process of the claim in suit. So far as that feature was concerned, it was immaterial whether the members were

744

formed simultaneously or separately. It is also evident that the burnishing operation under either method would "* * * press portions of said outer member being burnished, into intimate contact with said inner member, * * *" as called for in Claim 7.

The main argument relied upon to overcome the Brasco use is that it was not successful as evidenced by the fact that 1,000 feet of the 20,000 feet of stainless steel ordered by the Vitrolite Company were returned for the reason that the purchaser was not satisfied with the polish. This, however, was returned and accepted by the purchaser after being repolished. This does not prove that the method was a failure. The most unfavorable inference to be drawn from the incident is that the process was not perfect—that it was subject to improvement. The salient features of plaintiff's process were employed, however. It is also argued that the testimony regarding the Brasco method was confined to an outer surface metal of a thickness of .015" and was not pertinent to the patent which calls for a metal of a thickness of .008". The claim itself, however, makes no reference to the desired thickness of the outer member and the reference on which plaintiff relies is found only in the specification. Furthermore, we are of the view that invention can not be made to depend upon the thickness of the outer member of the structure.

At this point it is pertinent to point out that stainless steel first became available in 1930. Since then there has been a great improvement in its character and quality. In 1930, 1931 and 1932, it came from the manufacturer (steel mills) with an oxide surface. Subsequently this oxide surface was largely removed by the manufacturer so that the steel was easier to polish and less susceptible to scorching and burning during the polishing operation. We are convinced that the improvement in the quality of steel which plaintiff and others were able to obtain had more to do with plaintiff's improved product than the process it claims to have invented. The polishing operation being materially reduced because of the improved quality of steel, it followed that the thickness of the steel employed could likewise be reduced. In its brief plaintiff admits that the method used by Brasco was "all right and satisfactory when the outer surface member was Monel Metal, nickel-silver or similar metals, which metals are not stainless steel, but was totally unsatisfactory and incapable of producing a satisfactory article when stainless steel of a thin gauge was used as the outer surface member." The thought naturally arises: Was it invention to conceive the idea of polishing one kind of metal by the same method which has been employed in polishing another? It appears to us that the mere transfer of the method from one metal to the other would have required only a reasonable amount of skill. In addition, as already pointed out, Brasco employed its process in polishing stainless steel with at least a fair degree of success.

In its brief, plaintiff states: "The patent in suit discloses and claims particularly a method of burnishing and polishing so that the heat generated thereby is dissipated and not used."

Undoubtedly, this part of the disclosure was revealed by Brasco more than two years prior to the filing of the application. In rejecting the claims as originally filed, the Examiner made this statement: "* * There is no invention required to burnish the outer surface of the stainless steel, since it is admitted in the specification that it is old to burnish members of stainless steel."

While a number of patents were cited as reference, the Examiner, of course, did not have before him the Brasco use which demonstrates conclusively, in our judgment, that the polishing or burnishing operation did not constitute invention. Therefore, the feature of the claim which is to save the patent, if it is to be saved, is the rolling or pressing together of the inner and outer members simultaneously. This was old in the art as is disclosed by a number of prior art patents. Three of such patents, not cited in the Patent Office, are the Hoppen German Patent, No. 140,724, issued December 3, 1901; the Hellmich Patent No. 910,814 issued January 26, 1909; and the Jackson Patent No. 953,955, issued April 5, 1910. They all disclose the process of the simultaneous formation of a two-ply metal structure by the overlapping of the edges of the outer member. The most pertinent disclosure perhaps is that by Hoppen, who describes a method of making objects from sheet metal with bright aluminum surfaces. The advantages of such surface are set forth, and the process is described as follows: "* * * according to the new process, sheets of tinplate, iron plate, or the like are covered with

sheets of aluminum plate as thin as possible, and the desired object of use, e. g., a lamp bowl, then pressed out of this double sheet, so that the aluminum sheet comes to lie on the outside. The edges of the sheets are then united with each other by turning them over, while any kind of soldering can easily be applied to the inner sheet."

It then states: " * * * the present invention lies therein, that the bottom sheet and the aluminum sheet are laid together in the flat state and then for the first time pressed into the desired form."

▇▇▇ This patent, of course, makes no disclosure with reference to a burnishing or polishing operation of the outer member, but it plainly discloses the formation of such members simultaneously and a uniting of the two members by a turning of the edges of the outer member over the inner. It is sought to distinguish this disclosure by arguing that the two members are to be soldered together, but we think the disclosure reads to the contrary. The soldering which is mentioned plainly refers to the inner member and is the suggested means of fastening this two-ply member to the object to which it is to be attached. Plaintiff contends that even though these patents were not cited in the Patent Office, there is a presumption that they were considered. A similar contention has been urged heretofore upon this court and rejected. Boynton v. Chicago Hardware Foundry Co., 7 Cir., 77 F.2d 799, 801; Moran v. Protective Equipment, Inc., 7 Cir., 84 F.2d 927, 929. True, as pointed out by the plaintiff, none of these prior art patents contains any disclosure of a burnishing or polishing step in the manufacture of a two-ply structure. Under such circumstances, it has been held that a prior art patent can not be regarded as an anticipation. Parks v. Booth, 102 U.S. 96, 26 L.Ed. 54; Chicago Lock Company v. Tratsch et al., 7 Cir., 72 F.2d 482. Even so, it does not follow that the disclosures of such patents are irrelevant to the question of invention. The method of simultaneously fastening two strips of metal without welding or soldering was so well known that its utilization as a step in plaintiff's process did not confer upon it the dignity of invention. See Scherzer Rolling Lift Bridge Co. v. City of Chicago et al., 7 Cir., 2 F. 2d 601, and cases therein cited.

Plaintiff had long been engaged in the manufacture of various structures and ma-terial for store fronts and the like. Prior to 1930, it had manufactured two-ply structures of various metals. The most common combination appears to have been a mild steel inner member and a copper surface outer member. Usually the two members were formed separately as was later done by Brasco. When stainless steel became commercially available for laminated purposes, plaintiff commenced experimenting with it, instead of copper, bronze or other materials which it had used as an outer member. About the middle of 1932, plaintiff first made a laminated metal product by rolling two flat pieces of metal simultaneously. At first it was necessary, on account of the heavy oxide finish of the stainless steel, to partially polish it before it was attached to the backing member. Afterwards, when the quality of the steel improved, all polishing was done on the completed structure. For some time prior to the patent application, plaintiff experimented with, and perhaps improved, the process which it now claims was invention. As stated before, however, we are of the opinion that such improvement was largely the result of the higher grade stainless steel which was commercially available, plus the improved quality of the abrasive material which was used for the polishing operation, and such improvement of method as would naturally suggest itself to one skilled in the art.

▇▇▇ We do not agree with defendant's contention that plaintiff's prior use was such as to invalidate the claim. It is true, in an interference proceeding in the Patent Office, an affidavit was made by Fred and Isidore Himmel that they conceived the invention in the forepart of July, 1930; that about the same time they first explained the invention to others, and that they first embodied the invention in a full-sized structural member during the same month. These statements, however, do not show a public use. The other parties to the interference proceeding, Murphy and Osborn, also filed an affidavit claiming to have been the first inventors and that the structure of the invention was first exhibited by them July 1, 1931. The proceeding did not go to a hearing but an award of priority was made on concession by Murphy and Osborn. This award is relied upon by plaintiff as strengthening the presumption of validity. We doubt if it can be so utilized. There was no hearing

or determination by the Commissioner, and the award was solely the result of the concession. Subsequently, a license was issued to Murphy without cost. It is a fair inference that this was a part of the agreement which resulted in the disposition of the interference matter.

The disclosures in the interference proceeding show almost identical steps on the part of the plaintiff on the one hand, and Murphy and Osborn on the other, to solve this so-called problem arising upon the advent of stainless steel. As already pointed out, Brasco took similar steps and, in fact, appears to have been ahead of the others. The fact that all of them recognized the problem and took almost identical steps in its solution, refutes the idea that the disclosure by plaintiff amounted to invention. Elliott & Co. v. Youngstown Car Mfg. Co., 3 Cir., 181 F. 345, 349; Ruben Condenser Co. v. Aerovox Corp., 2 Cir., 77 F.2d 266, 268; Julius Kayser & Co. v. Rosedale Knitting Co., 3 Cir., 98 F.2d 839, 840.

Furthermore, we are of the opinion that irrespective of the prior art and use, there was no invention in the method of polishing called for in the claim. From time immemorial the accepted and well-known means of producing a bright finish upon metal has been by bringing it in contact frictionally with some object or material. This means had long been employed by the plaintiff and others on numerous metals. When stainless steel became available, it was utilized as to it. Assuming that the advent of stainless steel required improvement of this known method, such improvement, in our opinion, called for nothing more than the application of skill by those familiar with the polishing of metals. Neither do we think that inventive genius was involved in the use of a backing member for the purpose of dissipating the heat generated in the polishing operation. There was no discovery in suggesting that certain metals might be used as heat conveyors or dissipators. We assume that any metallurgist or other person who had made a study of metals was familiar with their nature in this respect. It must have been known and readily conceivable that the excessive heat engendered by the polishing operation could be dissipated by means of a backing member of higher heat-conductivity. Further, there was no discovery in the idea suggested of forming the inner and outer member simultaneously. In fact, the element of the claim most strongly relied upon as constituting invention did not require it.

Other questions are raised which have been considered, but which, in view of what we have said, there is no occasion to discuss or decide. The decree is reversed with directions to dismiss the bill of complaint because of the invalidity of the claim in suit.