## MILLER v. SWARTTZ et al.
### No. 4499.

Circuit Court of Appeals, Third Circuit.
Sept. 21, 1931.

Rehearing Denied Nov. 2, 1931.

Busser & Harding, of Philadelphia, Pa. (Geo. J. Harding and Frank S. Busser, both of Philadelphia, Pa., of counsel), for appellant.

Levi & Mandel, of Philadelphia, Pa. (Alvin L. Levi and Julius C. Levi, both of Philadelphia, Pa., of counsel), for appellees.

Before BUFFINGTON, WOOLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge.

The plaintiff appeals from a decree dismissing his infringement bill based on the single claim of a patent to Elston, No. 1,690,-776, for woven material. The District Court held the claim invalid for want of invention. As the structure and general appearance of the defendants' material were those of the patented product except as to certain strand embellishments, the patent, if valid, is clearly infringed. The sole question, therefore, is invention.

The defendants, doubtless speaking for the industry at large, maintain, and the trial court held, that the woven material of the patent was nothing more than a result of a common practice of the art, involving nothing new in structure and little, if anything, new in appearance. They also urge that the patent, if sustained, would greatly disturb

that practice and play havoc with the art. There is enough in these contentions to cause us, treading warily in this field, to distinguish the invention from the practice by stating the practice and defining the invention precisely.

The weaving art is a large one. Its members are constantly engaged in developing new and attractive fabrics. On that depends business success. A pleasing effect depends on the design, and the design on the strand structure, that is, the number and color of strands in the warp and weft and their underlying and overlying relation to one another. Designs are therefore infinite in number and appearance. When one proves to be attractive it is made up and sold, and if it sells well, competitors, picking it apart, discover the structure and produce and market the same material.

As we are not concerned with the ethics of such conduct, it will be enough to say that it is universal in the industry and that the plaintiff himself engages in it.

The legal justification for one man thus appropriating the work of another is, the defendants contend, that the product is merely that of skilled workers and does not, and in truth cannot, involve invention and therefore the originator has no exclusive right to make and sell it. The defendants claim that the development of an attractive design from an arrangement of strands, accidentally hit upon, is all the patentee did in this case and that in consequence the patent awarded him for his work is invalid for want of invention.

We recognize the general trade practice, the dearth of opportunity for the display of inventive faculties and the danger of awarding patents in that field. If Elston did nothing more than make a new design having an attractive appearance and proving to be readily saleable, we would not sustain his patent.

But Elston did something more than obtain a happy result from a common practice.

Twisted yarns—yarns made from two or more strands of different colors twisted into one strand—were old. When thus made, the different colors are visible alternately along the yarn. The effect of twisted yarns when woven into a fabric was long known. When used in certain structures they produced a mottled effect, that is, patches of different colors irregularly placed. Knowing this, the plaintiff instructed Elston, his designer, to make a pattern of single strands of different colors which he had on hand and produce, if possible, the effect of double or twisted strands. That, seemingly, was a new idea. If practicable it would save money, for single strands of solid colors are cheaper than double strands of mixed colors.

Elston worked on the idea for several weeks and eventually developed a fabric structure with strands of two groups; one group consisting of two strands of one color and three of another, and the other group consisting of one strand of one color and two of another, the whole constituting a repeat of weave of sixteen strands in each direction and having the mottled appearance produced by twisted yarn.

The fabric was an instant success, was sold in large quantities and was at once copied by the industry. Elston was then awarded the patent for woven materials of this type.

Manifestly, Elston conceived a new and cheaper way of producing an old effect. Did it involve invention?

It should be noted that Elston was not the first to make this particular structure of warp and weft. It could be, and doubtless is, used to produce stripes and checks. Nor was he first to develop a mottled effect. That had been produced by twisted yarns and, maybe, by other strand structures. Therefore his patent does not cover every structure with a like number and arrangement of strands; nor does it cover every fabric with a mottled effect. It covers only that to which it is specifically limited by its own terms, namely; a structure of threads of particular groupings as to number and color and particularly woven as to repeat of weave and interlacing as disclosed and restricted by the claim, whereby a pattern, having not a mottled appearance of any kind but the mottled appearance of twisted yarn as defined by the specification, is produced. These limitations are not merely restrictive of the invention but, oddly enough, are essential to a disclosure of the invention, which is one way of doing just one new thing, namely; to get a twisted yarn effect without using twisted yarn. With these self-imposed and very positive limitations, we are of opinion that, notwithstanding much confusion in the testimony as to strand structures and mottled effects, the patent involves invention and that the decree of the District Court should be reversed with instructions that a decree be entered holding the patent valid and infringed.