**JULIUS KAYSER & CO. et al. v. ROSE-DALE KNITTING CO.**

**No. 6573.**

Circuit Court of Appeals, Third Circuit.

July 23, 1938.

Hugh M. Morris, of Wilmington, Del., Charles H. Howson and Joseph G. Denny, Jr., both of Philadelphia, Pa., and Noah A. Stancliffe, of New York City, for appellants.

Samuel E. Darby, Jr., of New York City, Thomas G. Haight, of Jersey City, N. J., Henry N. Paul, of Philadelphia, Pa., A. I. Spiro, of New York City, and Fraley & Paul, of Philadelphia, Pa., for appellee.

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

BUFFINGTON, Circuit Judge.

In the court below the plaintiffs, assignees of patent No. 1,969,307, granted August 7, 1934, to Charles A. Kaufman for "hosiery and the manufacture thereof," brought suit against defendant charging infringement. On final hearing the trial court held the patent invalid. Thereupon plaintiff took this appeal.

The case concerns the weaving of full fashioned chiffon hosiery devoid of horizontal bands or streaks or, as styled by the trade, "Ringless Stockings". Such streaks are caused in silk hosiery by the fact that the delicate threads made by silk worms varied in diameter. The aim of the patentee, as stated in the patent specification, was to prevent such streaks or rings, or, as he states it, "my investigations show that my invention overcomes the formation of the said horizontal bands, horizontal streaks and light or heavy horizontal shade effects in all full-fashioned silk hosiery up to and including the twelve thread service weight."

The patentee's method of obviating this was by simultaneously using a plurality of threads instead of a single one, or, as his specification states: "In order to overcome the defects or objections to which I have

referred,—I employ a plurality of different cones, bobbins or other packages of silk, preferably of an uneven number, as, for example, three, or five, or seven, or nine, etc. I so support the said cones or thread packages that a thread from each cone is delivered to a different thread finger or thread guide, and each such finger or guide is, by appropriate mechanism moved from one side of the bank of needles across to the other side thereof, laying the thread against the needles to be immediately formed into loops by the co-action of the sinkers, dividers and knocking-over bits in a manner which need not be more fully described."

This process was specified in his claims, viz., "said portions of the stocking being formed of at least three separate yarns of natural silk;" "whereby the inevitable inequalities in different portions of the same yarn of natural silk are diffused and distributed, and said inequalities are all blended by the said interposition of single courses of all the yarns so that the so-called horizontal streaks or bands on light and heavy shade characteristics are substantially eliminated.

It will thus be seen, as we view the case, the swollen record in this case narrows into the simple question whether this process was novel and involved invention. Study of the record shows that it was well known in the weaving art that variations in the diameter of threads and yarns could be minimized by what is known as "mixing". Thus, to cite but this single instance, the Textile Weekly, September 20, 1929, where it is said: "The only satisfactory way of obtaining a regular fabric free from bars is to adopt the old method of 'mixing' by using two or more shuttles." "Mixing" is a method well known to most sections of the textile industry, and has been employed for very many years wherever regularity of fabric has been required. In that connection we note that the use of a multiplicity of strands as a single one was shown in the woolen weaving art considered by this court in Miller v. Swarttz, 3 Cir., 52 F.2d 542, where, antedating the patent here involved, it was said (page 543): "Twisted yarns— yarns made from two or more strands of different colors twisted into one strand— were old. When thus made, the different colors are visible alternately along the yarn. The effect of twisted yarns when woven into a fabric was long known."

It will thus be observed that the problem of a ringless stocking became acute only after short skirts came into vogue and light weight chiffon stockings supplanted heavier and woolen articles. Coincident with that demand and substantially about the same time, six other alleged inventors disclosed the three threads in one method. These facts tend to show that the idea was not the original act of an individual inventor, but the simultaneous solution of half a dozen mechanical improvers, so making the alleged invention nothing but the natural advance of the art herein involved. Moreover, the mode in which the patent issued as between these applicants shows that the usual presumption arising from the grant of a patent does not here arise. Instead of fighting out the question of the priority in the patent office, the applicants agreed among themselves to have an arbitration to determine priority, with the evident purpose of forming a patent pool of which the alleged inventors should share. In that regard the court held (18 F.Supp. page 838):

"The charge really rests upon the averment, the truth of which is frankly admitted, that the seven or eight rival claimants to this invention who were parties to the interference proceeding in the Patent Office, agreed among themselves to submit their respective claims of priority of invention to an arbitrator by whose decision they agreed to abide. The arbitrator decided in favor of the patentee. The others accordingly conceded priority to him and the Commissioner issued to him the patent in suit."

In view of the foregoing practices and their undermining the prima facies originality of the thus granted patent, we do not deem it necessary to dismiss the facts save to say that even the proposed arbitration was not followed, but the question of priority was decided by the arbitrary action of the pool functioning through designated members.

The patent of Kaufman has been discussed in detail not only in the exhaustive opinion of the court below, but also and subsequently by the Exchequer Court of Canada in the case of Belding v. Kaufman, both of which for the reasons therein stated held the Kaufman patent invalid. Agreeing with these cases, we hold the patent invalid for want of invention. So holding, the decree dismissing the bill is approved.