**Edward F. OLSEN, Plaintiff,**

v.

**BABY WORLD COMPANY, Inc., and Alan Daniels, Defendants.**

**Civ. A. No. 13858.**

United States District Court
E. D. New York.

Dec. 28, 1954.

See, also, D.C. 120 F.Supp. 462.

John C. Blair, Stamford, Conn., Robert A. Sloman, Detroit, Mich., and William H. Parmelee, Pittsburgh, Pa., of counsel, for plaintiff.

Mock & Blum, New York City, Asher Blum, and Richard Blum, New York City, of counsel, for defendants.

GALSTON, District Judge.

This complaint charges infringement of two letters patent to Edward F. Olsen: one mechanical patent, No. 2,623,-368, issued December 30, 1952; and the other design letters patent, No. 165,-778, issued January 29, 1952. The answer denies infringement and alleges invalidity of the patents.

Both patents relate to a spill proof fluid container, and more particularly, as the patentee says in the mechanical patent, to a cover construction adapted for use upon a glass, a cup or other container with an open end to prevent accidental loss of the complete contents through displacement of the container.

That patent recites that the object of the invention is to provide a form or mold cover construction adapted for positioning over the open end of a fluid

container, and which is provided with a plurality of spaced openings in communication with the interior of such a container, the specific object being to enable a child to suck the liquid through the openings from the container.

The patent discloses a number of forms, and the commercial device of the plaintiff is shown in figures 10 and 11 of the patent. The patentee says that the construction is particularly adapted for the use of young children "in teaching them to drink alone from a glass". The patentee observes that an accidental upsetting of the glass will cause little or no spilling of the fluid contained therein. In the form illustrated in figure 10, the container 64 has an open end 65, over which there is provided a cover 66 having an annular depending flange 67 which bears against the outer surface of the container at its upper end. An elongated "arcuate" angularly inclined spout 68 is formed upon the top of cover 66, and a plurality of "arcuately" arranged, elongated, similarly inclined channels 69 are formed therein, through which a child may withdraw the fluid. The device also has an air inlet opening 70 within the cover, upon its opposite side.

There is but one claim to the patent and it reads:

"In combination with a fluid container having a circular open end, a dome shaped cover removably secured thereover, and an elongated outlet spout of wedge shape in vertical cross-section extending upwardly from one side of said cover in substantial alignment with the side wall of said container and of sufficient horizontal extent to have formed therein a series of substantially vertical apertures in communication with the interior of said cover, said cover having formed therein an air inlet opening spaced from said spout, said apertures being in substantial alignment with the side wall of said cover."

█ It may be remarked that no invention can consist merely in providing a new shape of a device, nor in multiplying parts, unless indeed a new effect is attained. Design letters patent No. 136,098, issued August 3, 1943 to Hartman, illustrates a dispensing cap for a container which is wedge shaped.

Defendant contends that the claim in suit is merely for an aggregation. The air hole 70 admits air whether the outlet spout is wedge shaped or any other shape, or if the cover is dome shaped or of any other shape. The spout, whether it has one aperture or more, always acts as a spout, without regard also to whether the spout is wedge shaped or otherwise. Breaking down the claim there seem to be these elements:

1. A container.

2. A cover.

3. A wedge shaped outlet spout having multiple apertures.

Aside from any question of prior art, a serious question arises whether a structure of the sort defined can meet the test of invention set forth in Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162.

█ It is to be doubted whether the claim fails because of the contention that it defines an aggregation rather than a combination. It is fundamental law that if the function of the parts is merely the sum of the function of each part, then we would have a true aggregation. On the other hand, if there is a cooperative effect rather than a mere sum of individual effects, we have a combination. For the plaintiff it is argued that the device patented is for a very special purpose. It is a drinking cup for use by an infant in making that difficult transition of use from a nipple to the conventional cup or tumbler. Thus the use of a cover and spout avoids drinking from an open cup, and the use of the multiple perforations at the terminals of the channels from the interior of the cup to the outlet of the spout reduces the amount of liquid which would be lost if the cup were inverted. It is for that reason that in his patent Olsen defines

the device which he invented as a spill proof glass. So if the device is not 100% spill proof, it certainly is more effective in avoiding the loss of the liquid than a spout such as that designed by Hartman, design letters patent No. 136,-098, supra. Moreover, the provision for an air inlet in the cover does aid in the control of the flow of liquid.

The defendant assails the alleged invention also on the prior art. The following patents are relied on:

Stimpson, No. 308,106, for a liquid containing package. This patent discloses a can having a removable cover. The removable cover has a spout and a hollow handle. The hollow handle is air-conducting, which communicates with the interior of the can, and also with the interior of the nozzle below its rim. The Olsen claim when read on the Stimpson device shows in Stimpson the equivalent of the container, Olsen's glass 64 in Stimpson's can A. The dome shaped cover of Olsen is found in Stimpson's removable cover. The Olsen spout 68 is, of course, different in shape from Stimpson's spout B. Olsen added a vertical diaphragm with channels in the spout which provides a series of vertical apertures. Both covers have an air inlet. These apertures of Olsen are in alignment with the side wall of the cover. There is enough difference, therefore, to hold that Stimpson is not a full anticipation of Olsen.

Patent No. 900,644 to von Baeyer, issued October 6, 1908, relates to a dispensing vessel. Figure 1 of this patent shows a cup having an air inlet and a spout. The inventor says:

"the present invention is made in the form of a cup, the outlet channel being arranged on the outside of the vessel and leading upwards on the side opposite to the inlet or opening for filling the vessel."

The specification recites that for use the vessel is first filled and the liquid slowly and without interruption poured out of the spout until no further liquid flows. A quantity of liquid remains in the vessel. Each time the vessel is filled, a nearly equal quantity of liquid will issue from the spout. To effect its purpose, von Baeyer provided the channels c and d. Olsen does not find it necessary to use such channels.

The Denton patent, No. 332,239, issued December 15, 1885, is for an oil can. True this is not an analogous art, though the claim of the Olsen patent defines any fluid container, even though the specification emphasizes the spill proof glass feature. In the Denton patent we find the upward extending spout F at one edge of the container A. The spout at its base is "about semi-circular in cross-section" and then tapers to the point at the opening.

Patent No. 2,622,420, issued to W. W. Rice, December 23, 1952, is for a drinking cup: This patent is not especially helpful, since it does not bear on plaintiff's commercial device, nor is there sufficient in it to anticipate the claim of the patent. The cover in the Rice device does show two nipples, so that when the child drank out of one nipple, air flowed inwardly through the other nipple.

It appears from the foregoing that no one patent is an anticipation of the Olsen patent; but there is a prior use of the defendant which bears an important relationship to the Olsen patent on the question of whether Olsen exercised invention. It is a cup that was put on the market prior to the Olsen alleged invention and which is similar in construction to that disclosed in figures 1, 3 and 6 of the Olsen patent. The defendant company sold this cup as far back as 1945. The cup has a cover in which a series of drinking holes appears, and removed from this area are two air holes in the cover. Comparing this cup with the device defined in the claim of the patent, one is concerned with the question of whether it involved invention to make the cover bulge shaped and to provide a spout such as is defined in that claim. There can be no doubt that on the question of utility the provision of a bulged cover and a spout meets the statute, though neither is novel. Commercial success attended the manufacture and

sale of the plaintiff's cup. The Patent Office examiner, so it appears from the file wrapper, had been informed in a personal interview of the applicant's attorney that there had been public acceptance of the Olsen cup, and that it was being manufactured and sold in extremely large quantities of approximately fifty thousand units per month. However, in this connection it must be observed that a national advertiser of great prominence, the Heinz Company, beginning October, 1952, has had the exclusive distribution of the Olsen cup as a premium item based on the purchase by the customer of six cans of the Heinz baby foods.

■ Unfortunately there remains the determination of whether the improvement over the disclosures of the prior art, and particularly the defendant's 1945 cup, can be accorded the status of invention. The record affords no convincing evidence that there was a long felt need in the art for this so-called transition device to be used by infants or babies in the weaning period. The only suggestion of such a need is the testimony of the plaintiff, who says that his wife looked for a cup to be used during the weaning period for her own child, but did not succeed in finding such a cup. By the strict standards which the Supreme Court has laid down, I must reach the conclusion that the improvement that Olsen made does not meet the rigorous tests that have been suggested by the Supreme Court in determining invention. The cup clearly falls within the class "gadgets", a term which was casually used by the witness Dimond, of the Heinz Company, in referring to the cup.

In the general consideration of the Olsen mechanical patent it is well to refer also to Olsen's design patent. It is said in this patent that:

"The dominant features of the design reside in the container cover of circular form, having a beaded annular base, rounded upper corners, and a flattened, perforated upright spout situated at a side of the flat top as shown."

It is clear from this description that it reads on figures 10 and 11 of the Olsen mechanical patent.

■ From the very beginning of the trial I was impressed with the conviction that the essential feature of the design patent was not the appearance of the cup but its function as a drinking cup. The authorities are very clear that in such cases a design patent cannot be accorded the status of validity. See A. C. Gilbert Co. v. Shemitz, 2 Cir., 45 F.2d 98, 99. Judge Augustus Hand said in that case, in which the court had to consider a design patent for a fruit juice extractor:

"If the design goes no farther than to embody an obvious neatness and attractiveness that will make articles of household use more compact and pleasing than has generally been the case, this is not in itself enough."

See also In re Eifel, 35 F.2d 70, 17 C.C. P.A., Patents, 582.

Even on the question of novelty of design the Olsen spout is substantially shown in the design patent to Hartman, No. 136,098, issued August 3, 1943, for a dispensing cap for a container.

As far back as Gorham Mfg. Co. v. White, 14 Wall. 511, 81 U.S. 511, 20 L. Ed. 731, Mr. Justice Strong, speaking for the court, said:

"The Acts of Congress which authorized the granting of patents for designs were plainly intended to give encouragement to the decorative arts. They contemplate not so much utility as appearance, and that not an abstract impression or picture, but an aspect given to those objects mentioned in the Acts."

■ Finally it must be said, in the matter of the design patent, that even if the design is new, original and ornamental it must be the product of invention. See Title 35 U.S.C.A. § 171; Alfred Bell & Co. v. Catalda Fine Arts, 2 Cir., 191 F.2d 99; White v. Leonore

Frocks, 2 Cir., 120 F.2d 113; Gold Seal Importers v. Morris White Fashions, D.C., 38 F.Supp. 890, affirmed 2 Cir., 124 F.2d 141. There was no invention in the creating of the design of the Olsen cup.

I have only to add that if these patents were valid the defendants infringe, but in my judgment both patents are invalid for the reasons that I have stated. The complaint will be dismissed.

Appropriate findings of fact and conclusions of law will be filed concurrently with this opinion.