**B & M CORPORATION, a Louisiana corporation, Plaintiff,**

v.

**KOOLVENT ALUMINUM AWNING CORPORATION OF INDIANA, Defendant.**

**No. IP 56–C–66.**

United States District Court
S. D. Indiana,
Indianapolis Division.

Nov. 26, 1957.

Stevens, Davis, Miller & Mosher, Robert F. Davis, Washington, D. C., Grabill & Baker, Charles C. Baker, Indianapolis, Ind., for plaintiff.

Shine & Chambers, Gerald P. Shine, Anderson, Ind., Utzler, Parmelee & Christy, William H. Parmelee, Elmer S. Utzler, Pittsburgh, Pa., for defendant.

HOLDER, District Judge.

The plaintiff, a Louisiana corporation, whose principal stockholder and officer is Lionel Babin, filed this action against Koolvent Aluminum Awning Corporation of Indiana for infringement of United States Letters Patent No. 2,542,919 (hereinafter called Freeman patent), insofar as claims 1 to 10, inclusive, are concerned, an accounting for profits and damages therefor, injunction for their continued infringement, and costs, pursuant to 28 U.S.C.A. §§ 1338, 1400 and 1694.

The case develops a familiar pattern of facts characterized in that class of patent cases of a simple improvement purportedly patented which attempts to recapture a combination of expired and expiring patents, now soon to be public

property, and capturing a vast manufacturing and sales organization together with their markets covering the entire country, all developed by the owners and licensees of the expired and expiring patents.

The Freeman patent was issued on February 20, 1951, and ultimately assigned to plaintiff. This purported invention relating to Rigid Type Sheet Material Awnings is an improvement of the Houseman patent, hereinafter described. The Freeman patent describes a ventilated awning primarily used exteriorly on buildings and in connection with windows, porches and the like. The feature of the Freeman patent principally in issue is the provision of an improved fastener in the form of a keying clip for rigidly but removably securing complemental panels of channel-shaped configuration, called pans and covers, together to form a rigid roof for a ventilated metal awning. The key is so shaped as to enable the same to be retained in the pans and covers and is adapted for adjustable attachment to the supporting framework for securing the pans and covers thereto. The "keying clip fastener" is metal in the general shape of an "I". The horizontal bottom bar of the "I" is folded to form a spring clip which is affixed to the frame of thin metal by inserting the frame between the folded metal or clip of the "keying clip fastener". The vertical stem of the "keying clip fastener" extends up between the two spaced pans of the roof resting on the frame. Near both ends and under the top horizontal bar of the "I", keying clip fastener, there is a notch which hooks over inturned lips of edges of two pans and holds them so spaced down on the frame. The covers equipped with inturned lips along each edge are pushed down perpendicularly over the two end edges of the top horizontal bar of the "I", keying clip fastener, hooking and securing the cover without engaging the pans and covers thus permitting ventilation and light to enter between the covers and pans. In the alternative, the assembly of the pans and covers could be accomplished by sliding them into position.

The Freeman patent's "keying clip fastener" obviates the use of screws and equivalent fasteners through the pans and covers thus eliminating water seepage through screw holes in the pans and covers; permits assembly on the buildings, piece by piece as opposed to unit assembly on the ground and cumbersome erection by hoist, and makes for ease of attachment and removal, all with a saving of time and cost.

Drawings taken from the patent are illustrations, by way of example, of the preferred embodiments of the Freeman patent necessary to the disposition of this case and set forth in Appendix A.

The defendant admits it has been manufacturing metal ventilated awnings of the kind described in plaintiff's complaint since the year 1948, containing the "keying clip fastener" and inturned lip of the pan and cover members of the roof thereof at the suggestion of its licensor, Koolvent Metal Awning Corporation of America under the Houseman patent.

The defendant contends that the Freeman patent is invalid for the reason that the inventor is not the sole and first inventor of the subject matter thereof; that the invention was known and used by others prior to the Freeman patent, or is shown in nine printed patents and publications popularly known as the Braunstein, Bloss et al., Bloss, Houseman, Tapman, Doe, Huntington, Harrison et al. and Helt patents all of which are hereinafter cited except the Helt patent.

The defendant also contends that the Freeman patent is invalid for the reason that the differences, if any, between the subject matter sought to be patented by the Freeman patent and the prior art are such that the subject matter as a whole would have been obvious at the time it was made to a person having ordinary skill in the art to which the subject matter pertains.

The defendant further contends that the Freeman patent is invalid for the reason that it purports to cover and claim more than the alleged invention disclosed; that it purports to cover an invention which was not the invention of the patentee, and that the claims of said patent are directed to an aggregation, or to an old and exhausted combination of elements.

The defendant also alleges other defenses of laches; estoppel; that George Houseman by reason of a cooperative clause in the assignment of the Houseman patent to plaintiff is a necessary party to this litigation; that no timely notice of infringement was given on plaintiff's product or to defendant; that defendant being a licensee of an assignee of the Houseman patent has the right to use the Freeman patent by reason of the plaintiff being an assignee of the Houseman patent who was bound by a cooperative contract with the Houseman patent inventor; or that Babin and not Freeman was the inventor. It is unnecessary for the court to discuss the evidence or the legal principles applicable to these defenses in view of the conclusion herein reached of the invalidity of the Freeman patent. 5 Moore's Federal Practice 52.06 (1), (1951 Ed.).

Prior to the Freeman patent, United States Letters Patent No. 2,098,705 were issued on November 9, 1937, and reissued on January 10, 1939, as reissue No. 20,975, hereinafter called the Houseman patent. The Houseman patent was assigned to plaintiff for the State of Louisiana and to the defendant's licensor, Koolvent Metal Awning Corporation of America for many states of the United States including the State of Indiana.

The Houseman invention was an improvement of the Matthews primary patent, United States Letters Patent No. 2,069,893 and reissue No. 21,053 of which primary patent the plaintiff was an assignee and defendant a licensee of Koolvent Metal Awning Corporation of America, assignee.

The Houseman patent relates to sheet metal awnings. It provides for a ventilated roof structure formed of channel-like slats, called "pans", extending up and down the slope of the roof, the slats on the bottom having upturned side flanges spaced from one another. The upper slats, called "covers", have downturned side flanges and cover the spaces between the pans. The pans were mounted on a crossbar and the covers supported on brackets secured to the crossbars that went up between the pans to the covers. In application bolts or screws were used in the assembly thereof through the pans, to secure them to the crossbars, through the covers, to secure them to the brackets and through the crossbars, to secure them to the brackets.

Drawings taken from the Houseman patent are illustrative, by way of example, of the preferred embodiments of the Houseman patent necessary to the disposition of this case and with its 19 claims are set forth in Appendix B.

It is the improvement of the primary patent and the Houseman patent in the assembly of the awning roof by the use of the "keying clip fastener", illustrated in Fig. 17 of the Freeman patent (Appendix A), for the holding of the pans and covers onto the framework that distinguishes the Freeman patent from the Houseman patent and which provides for some other unspecified equivalent fastener such as screws with brackets securing the pans and securing the elevated covers to the crossbars. The pans and covers of the Freeman patent are the same as the Houseman patent except for inturned lips on both edges parallel to the plates.

Prior to the issuance of the Freeman patent there was developed in the sheet metal industry roll forming equipment which made it possible for the accurate rolling of the channels for the pans and covers. Neither Freeman nor the plaintiff was in any way responsible for the development of the roll forming equipment.

With the roll forming equipment development, it made possible the practical use of the old forms of key clip

fasteners of prior art in the manufacture and assembly of metal awnings.

The asserted prior art of metal roofing other than ventilated awning roofing discloses the following:

Braunstein patent's features. United States Letters Patent No. 1,762,756 of June 10, 1930, which provides a method of fastening metal sheets to the framework of a roof without making holes in the metal sheets for screw or equivalent fasteners. Each sheet of metal on its inner side has hook flanges adapted to fit over the upper edges of the frame beam. The flange is formed by turning the metal. Space is left between the side edges of adjacent sheets in order to provide for the insertion of fastening means, and this space is finally covered by a cover piece, each side edge of each sheet is provided with a double clamping flange, a retaining angle flange spaced inwardly from the outer edge of the clamping flange and turned inward, and a cam flange from the inward edge of the angle flange and inclined outwardly and away from the sheet all of which are integral with the sheet and formed by bending the side edge back on itself, then outwardly perpendicular to the plane of the sheet, then inwardly parallel to the plane of the sheet and finally outwardly and away from the sheet. A drawing taken from this patent is illustrative by way of example, of a portion of the fastening means of this patent necessary to the disposition of this case, and is set forth in Appendix C.

Bloss et al. patent's features. United States Letters Patent No. 1,770,063 of July 8, 1930, which provides a method of fastening metal sheets to the framework of a roof without making holes in the metal sheets for screw or equivalent fasteners and permits dismantling without damage. Embodiments necessary to the disposition of this case are shown in Appendix D which consists of drawings from the patent, picturing in various forms as one unit, the key fastener of the roof sheet metal and the clip fastener to the framework.

Bloss patent's features. United States Letters Patent No. 1,780,862 of November 4, 1930, which provides for a structure of metal sheeting with a formed edge and a complemental cap strip and fastening means that can be readily applied to the adjacent edge of the sheeting without sliding from the end; which metal sheeting, cap strip and fastening ends makes it possible to secure the sheeting units together and the cap strip thereon without perforating either, making the assembly waterproof at a minimum cost. Embodiments necessary to the disposition of this case are shown in Appendix E which consists of drawings from the patent, picturing in various forms as one unit the key fastener of the roof sheet metal and the clip fastener to the framework.

Tapman patent's features. United States Letters Patent No. 2,192,719 of March 5, 1940, which provides for corrugated metal roof sheets whose spacing between adjacent sheets are covered by an overlapping cap which engages the folds of the edge of the sheet and clips and locks into place and is secured to the framework without perforating the sheet or cap for screws or equivalent fasteners. A drawing taken from the patent is illustrative, by way of example, of the fastening means necessary to the disposition of this case and is set forth in Appendix F.

Doe patent's features. United States Letters Patent No. 2,356,833 of August 29, 1944, which provides a method of fastening metal roofing sheets having side edges returned or flanged which sheets are held down against the roof framework by clips fastened to the sheathing or rafters and which has a snap on or slide on pre-formed or partially pre-formed covering member which contracts with the sides of adjacent flanges of the sheets. Embodiments necessary to the disposition of this case are shown in Appendix G illustrating assembly of the roof by use of the key fastener clip of the roof sheet metal without perforating the sheet metal or cover-

ing member for screw or equivalent fasteners.

Huntington patent's features. United States Letters Patent No. 2,408,557 of October 1, 1946, which provides a method and device for attaching sheet metal to a roof frame without perforating the sheeting. The edges of the sheeting are bent at right angles to the surface so as to engage a specially formed clamping fastener. The joint thus formed is covered and made tight by a cap which is locked in position by the edges of said clamp fastener. Embodiments necessary for the disposition of this case are shown in Appendix H which consists of drawings from the patent and pictures in various forms the key fastener.

The asserted prior art of metal ventilated roofing discloses the following:

Houseman patent's features. United States Letters Patent No. 2,098,705 of November 9, 1937 and reissued on January 10, 1939, as reissue No. 20,975 were heretofore referred to.

Harrison and Korman patent's features. United States Letters Patent No. 2,562,092 of July 24, 1951, which is for an improvement of the Houseman patent which eliminated perforations for screw or equivalent fasteners in the cover members of the roof but did not eliminate the perforations from the pan members. A drawing from the patent is illustrative, by way of example, of the fastening means necessary to the disposition of this case and is set forth in Appendix I.

■ The court is mindful that the Freeman patent is presumed valid with the issuance thereof and there remains for discussion only the various affirmative defenses presented by defendant and that defendant must carry the laboring oar of the burden of proof of such defenses. 35 U.S.C.A. § 282.

This presumption of validity is rebuttable and is weakened where, as here, the Examiner of the United States Patent Office did not have before him the closest prior art. The Houseman patent was examined but not the Bloss et al. patent, the Doe patent, and the Huntington patent. Himmel Bros. Co. v. Serrick Corp., 7 Cir., 1941, 122 F.2d 740; Nordell v. International Filter Co., 7 Cir., 1941, 119 F.2d 948; Rosaire v. Bariod Sales Division, National Lead Co., D.C. Tex.1954, 120 F.Supp. 20.

The prior art patents of Braunstein, Bloss et al., Bloss, Tapman, Doe, Huntington, and Houseman so closely disclose the Freeman patented structure as to negative the existence of any valid claim covering the defendant's admitted awning construction. While the patent does not identically disclose the prior art patents, the difference between the subject matter of the Freeman patent and the prior art are such that the subject matter as a whole was obvious at the time the Freeman patent was perfected to any person or a person possessed of ordinary skill in the art to which the subject matter pertained and the claims 1 to 10, inclusive of the Freeman patent are invalid and void. 35 U.S.C.A. § 103.

The Bloss et al. patent, being prior art for roofs and other structures, and frames of buildings and other structures is in the category of roofs generally including awnings. This patent was not considered as a reference before the Patent Office when the Freeman patent was considered. One has only to change the shape and proportions of the Bloss patent subject matter to use it with the standard awning covers, pans and frame of the Houseman patent ventilated awning. The only difference in the Bloss et al. patent and the Freeman patent subject matter is an unimportant difference of shape and proportions. The Bloss et al. patent has cover members which are narrower than the pans, and side flanges of the covers slope instead of being perpendicular whereas the covers and pans of the Freeman patent are of the same shape and reversed to one another. The key clip fastener of the Bloss et al. patent can be used with the standard design of the Houseman patent pans and covers, simply by changing dimensions or pro-

portions which require and necessitate only mechanical skill and certainly possess no patentable difference. The Bloss et al. patent shows every principle of the Freeman patent to be old; the clip which hooks onto a runner, is old; it shows the vertical stem of the clip extending between the two pans for spacing, is old; it shows the pans with specially folded edges that hook under the ends of the "T" shaped clip, is old; it shows covers with downwardly-extending flanges and inwardly-turned lips hooked under the ends of the "T" shaped clip, is old. Every disclosed element of the Freeman patent has its counterpart in the Bloss et al. patent and some combination of the other prior art patents except for dimension or proportion of elements. Furthermore, there is nothing new or novel in the pans and covers as compared to the Houseman patent, the additional inturned lip of the Freeman patent pans and covers is simply an expedient adapted to the key clip fastener that any artisan could obviously accomplish by shaping or forming.

■ Whether the awning roof is ventilated or unventilated is unimportant to the issues as the same reasoning would apply. Admittedly, the Houseman patent was a ventilated awning which principle is old and incorporated in the Freeman patent and the adaptation of the key clip fasteners of the described prior art only required the artisan to change proportions and dimension, particularly the length of the vertical stem spacing and separating the pans and elevating the cover to permit the passage of light and air.

■ The Freeman patent has contributed nothing in teaching the sheet metal art how to attach roof plates to a frame or support and there is no patentable novelty or invention in the mere change of shape and proportion. Railroad Supply Co. v. Elyria Iron & Steel Co., 244 U.S. 285, 37 S.Ct. 502, 61 L.Ed. 1136; Illinois Welding Accessories Co. v. Johnson Welding Equipment Co., 7 Cir., 1947, 161 F.2d 624; Schreyer v. Chicago Motocoil Corp., 7 Cir., 1941, 118 F.2d

852; Monckmeier v. Erie Mfg. Co., 7 Cir., 1938, 98 F.2d 369.

It is unnecessary for the court to conclude the factual issues as to whether the Helt patent precedes the Freeman patent in view of the invalidity of the Freeman patent. 5 Moore's Federal Practice 52.06(1), (1951 Ed.).

Claims 1 to 10, inclusive of the Freeman patent are invalid and void for another reason.

■ The Freeman patent has claimed an unpatentable combination in that the patent substitutes clips for the brackets of the Houseman patent. It does not perform any different function than the Houseman patent; it provides shade in the same way; it sheds rain in the same way; it provides ventilation through the roof, and allows diffused light to pass through the roof while excluding the direct rays of the sun. The Freeman patent's contribution was merely to change the fastening for the pans and covers to the frame, by substituting one form of clip which was already well known in the art for another form of bracket in an otherwise old awning. If the Freeman patent key clip fastener was new, it alone should have been claimed; if it was old, the combination does not become patentable because one old form of fastener is used to replace another. The Freeman patent does not claim a new form of key clip fastener, on the contrary it claims "a ventilated awning construction". These claims are a combination of elements, as distinguished from a new fastener. Freeman has attempted to recapture the entire combination of the Houseman patent merely because he substituted a new mode of fastening. This he cannot do. Great Atlantic & Pacific Tea Company v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162; Lincoln Engineering Co. of Illinois v. Stewart-Warner Corp., 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008; Bassick Manufacturing Co. v. R. M. Hollingshead Co., 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251. There was no useful new result accomplished,

nor was there a substantial increase in efficiency in the combination of old elements to make it a new invention.

■ The plaintiff asserts that the Freeman patent has contributed to the commercial success of ventilated awnings. There is no evidence that the Houseman patent awnings could not be sold until the Freeman patent came along. On the contrary, the Houseman patent awning was commercially successful except when manufacturing was curtailed during the war years when metal could not be obtained. The Freeman patent did not bring success out of failure. In order for commercial success to be a controlling factor, it must be shown that the subject of the claim of the Freeman patent was responsible alone for the commercial success. De Mayo Coaling Co. v. Michener Stowage Co., 2 Cir., 1916, 231 F. 736, citing Doig v. Morgan Mach. Co., 2 Cir., 122 F. 460; De Cew v. Union Bag & Paper Corp., D.C.N.J.1944, 59 F.Supp. 301.

■ The evidence in this case also discloses that the commercial success of the Houseman patent and the Freeman patent has been achieved through advertising. Commercial success through advertising must be discounted. Walker on Patents, Dellers Edition, Vol. 1, p. 240; Olsen v. Baby World Co., Inc., D.C., 126 F.Supp. 660, affirmed per curiam 2 Cir., 1955, 227 F.2d 519.

■ There being no invention or discovery disclosed in the patent, asserted commercial success cannot weigh the balance in favor of the plaintiff. Dow Chemical Co. v. Halliburton Oil Well Cementing Co., 324 U.S. 320, 65 S.Ct. 647, 89 L.Ed. 973.

■ It follows, as the patent is invalid as to claims 1 to 10, inclusive for the reasons set forth in this opinion, that the defendant is not guilty of infringing it. Miehle Printing Press & Mfg. Co. v. Publication Corporation, 7 Cir., 1948, 166 F.2d 615; Bobertz v. General Motors Corp., 6 Cir., 1955, 228 F.2d 94; Cummings v. Moore, 10 Cir., 1953, 202 F.2d 145; James Heddon's Sons v. American Fork & Hoe Co., 6 Cir., 1945, 148 F.2d 230; M. Swift & Sons v. W. H. Coe Mfg. Co., 1 Cir., 1939, 102 F.2d 391; Everlube Corporation of America v. Electrofilm, Inc., D.C.Cal.1957, 154 F.Supp. 788; Gearon v. U. S., 1954, 121 F.Supp. 652, 129 Ct.Cl. 315; Osborn Mfg. Co. v. Newark Brush Co., D.C.N.J.1953, 111 F.Supp. 846, 847; Thys Co. v. Oeste, D.C.Cal. 1953, 111 F.Supp. 665; Joseph Bancroft & Sons Co. v. Brewster Finishing Co., Inc., D.C.N.J.1953, 113 F.Supp. 714; Daniel v. O & M Mfg. Co., D.C.Tex.1952, 105 F.Supp. 336; Breeden v. Attwood Brass Works, D.C.Mich.1952, 105 F.Supp. 876.

The court's findings of facts and conclusions of law having been filed separately herewith, the court directs that judgment be entered for defendant and against the plaintiff and that costs of this action without attorney fees be assessed against plaintiff.

APPENDIX A–1

Feb. 20, 1951          D. J. FREEMAN          2,542,919

RIGID TYPE SHEET MATERIAL AWNING

Filed June 13, 1946          4 Sheets–Sheet 1

FIG. 1

(Front elevation view of sloping awning)

FIG. 5

(Vertical transverse sectional detail substantially on a plane indicated by section line 5-5 of Fig. 1, parts being broken away)

FIG. 15

(Vertical sectional view through the keying clip taken substantially upon the plane indicated by the section line 15-15 of Fig. 5)

FIG. 17

(Perspective view of the key clip fastener)

APPENDIX A-2

2,542,919

I claim:

1. A ventilated awning construction comprising first and second sets of panels, each panel having an elongated body portion with longitudinal walls defining longitudinal channels with said body portion, the walls having lateral flanges overlying said body portion, key members detachably securing said sets of panels together in spaced relation, the panels of the first set overlying the panels of the second set, the adjacent edges of the body portions of overlying panels being spaced both laterally and vertically, each key member having its upper portion extending above the walls of the panels of the second set and being of less length than said channels to provide air flow passages between said panels and having a stem positioned between and spacing the adjacent walls of panels of said second set, said stem having lateral portions overhanging said adjacent walls and received in the channels and engaging the walls and flanges of panels of the first set to prevent lateral and vertical displacement of said panels.

2. A ventilated awning construction comprising first and second sets of panels, each panel having an elongated body portion with longitudinal walls defining longitudinal channels with said body portion, the walls having lateral flanges overlying said body portion, key members detachably securing said sets of panels together in spaced relation, the panels of the first set overlying the panels of the second set, the adjacent edges of the body portions of overlying panels being spaced both laterally and vertically, each key member having its upper portion extending above the walls of the panels of the second set and being of less length than said channels to provide air flow passages between said panels and having a stem positioned between and spacing the adjacent walls of panels of said second set, said stem having lateral portions overhanging said adjacent walls and received in the channels and engaging the walls and flanges of panels of the first set to prevent lateral and vertical displacement of said panels, said awning including a cross-bar extending transversely of said panels, fastening means securing said stem of each key member to said cross-bar.

3. A ventilated awning construction comprising first and second sets of panels, each panel having an elongated body portion with longitudinal walls defining longitudinal channels with said body portion, the walls having lateral flanges overlying said body portion, key members detachably securing said sets of panels together in spaced relation, the panels of the first set overlying the panels of the second set, the adjacent edges of the body portions of overlying panels being spaced both laterally and vertically, each key member having its upper portion extending above the walls of the panels of the second set and being of less length than said channels to provide air flow passages between said panels and having a stem positioned between and spacing the adjacent walls of panels of said second set, said stem having lateral portions overhanging said adjacent walls and received in the channels and engaging the walls and flanges of panels of the first set to prevent lateral and vertical displacement of said panels, the lower surface of said lateral portions being notched to receive the lateral flanges on the second set of panels.

4. A ventilated awning construction comprising first and second sets of panels, each panel having an elongated body portion with longitudinal walls defining longitudinal channels with said body portion, the walls having lateral flanges overlying said body portion, key members detachably securing said sets of panels together in spaced relation, the panels of the first set overlying the panels of the second set, the adjacent edges of the body portions of overlying panels being spaced both laterally and vertically, each key member having its upper portion extending above the walls of the panels of the second set and being of less length than said channels to provide air flow passages between said panels and having a stem positioned between and spacing the adjacent walls of panels of said second set, said stem having lateral portions overhanging said adjacent walls and received in the channels and engaging the walls and flanges of panels of the first set to prevent lateral and vertical displacement of said panels, the lateral flanges on the upper set of panels being engaged beneath the lower surface of said lateral portions.

5. A ventilated awning construction comprising first and second sets of panels, each panel having an elongated body portion with longitudinal walls defining longitudinal channels with said body portion, the walls having lateral flanges overlying said body portion, key members detachably securing said sets of panels together in spaced relation, the panels of the first set overlying the panels of the second set, the adjacent edges of the body portions of overlying panels being spaced both laterally and vertically, each key member having its upper portion extending above the walls of the panels of the second set and being of less length than said channels to provide air flow passages between said panels and having a stem positioned between and spacing the adjacent walls of panels of said second set, said stem having lateral portions overhanging said adjacent walls and received in the channels and engaging the walls and flanges of panels of the first set to prevent lateral and vertical displacement of said panels, the lower surface of said lateral portions being notched to receive the lateral flanges on the second set of panels, the lateral flanges on the upper set of panels being engaged beneath the lower surface of said lateral portions, the adjacent edges of the lateral flanges of adjacent panels of said first and second sets being maintained in laterally spaced relation by said lateral portions and said notches.

6. A ventilated awning construction comprising first and second sets of panels, each panel having an elongated body portion with longitudinal walls defining longitudinal channels with said body portion, the walls having lateral flanges overlying said body portion, key members detachably securing said sets of panels together in spaced relation, the panels of the first set overlying the panels of the second set, the adjacent edges of the body portions of overlying panels being spaced both laterally and vertically, each key member having its upper portion extending above the walls of the panels of the second set and being of less length than said channels to provide air flow passages between said panels and having a stem positioned between and spacing the adjacent walls of panels of said second set, said stem having lateral portions overhanging said adjacent walls and received in the channels and engaging the walls and flanges of panels of the first set to prevent lateral and vertical displacement of said panels, the lower surface of said lateral portions being notched to receive the lateral flanges on the second set of panels, the lateral flanges on the upper set of panels being engaged beneath the

lower surface of said lateral portions, the adjacent edges of the lateral flanges of adjacent panels of said first and second sets being maintained in laterally and vertically spaced relation by said lateral portions and said notches.

7. A ventilated awning construction comprising first and second sets of panels, each panel having an elongated body portion with longitudinal walls defining longitudinal channels with said body portion, the walls having lateral flanges overlying said body portion, key members detachably securing said sets of panels together in spaced relation, the panels of the first set overlying the panels of the second set, the adjacent edges of the body portions of overlying panels being spaced both laterally and vertically, each key member having its upper portion extending above the walls of the panels of the second set and being of less length than said channels to provide air flow passages between said panels and having a stem positioned between and spacing the adjacent walls of panels of said second set, said stem having lateral portions overhanging said adjacent walls and received in the channels and engaging the walls and flanges of panels of the first set to prevent lateral and vertical displacement of said panels, said lateral portions having inclined portions at their outer ends.

8. A ventilated awning construction comprising first and second sets of panels, each panel having an elongated body portion with longitudinal walls defining longitudinal channels with said body portion, the walls having lateral flanges overlying said body portion, key members detachably securing said sets of panels together in spaced relation, the panels of the first set overlying the panels of the second set, the adjacent edges of the body portions of overlying panels being spaced both laterally and vertically, each key member having its upper portion extending above the walls of the panels of the second set and being of less length than said channels to provide air flow passages between said panels and having a stem positioned between and spacing the adjacent walls of panels of said second set, said stem having lateral portions overhanging said adjacent walls and received in the channels and engaging the walls and flanges of panels of the first set to prevent lateral and vertical displacement of said panels, said stems being of greater height than that of said walls to vertically space the sets of panels from each other.

9. A ventilated awning construction comprising first and second sets of panels, each panel having an elongated body portion with longitudinal walls defining longitudinal channels with said body portion, the walls having lateral flanges overlying said body portion, key members detachably securing said sets of panels together in spaced relation, the panels of the first set overlying the panels of the second set, the adjacent edges of the body portions of overlying panels being spaced both laterally and vertically, each key member having its upper portion extending above the walls of the panels of the second set and being of less length than said channels to provide air flow passages between said panels and having a stem positioned between and spacing the adjacent walls of panels of said second set, said stem having lateral portions overhanging said adjacent walls and received in the channels and engaging the walls and flanges of panels of the first set to prevent lateral and vertical displacement of said panels, said awning including a cross-bar extending transversely of said panels, fastening means securing said stem of each key member to said cross-bar, said fastening means being mounted on said cross-bar for sliding movement thereon.

10. A ventilated awning construction comprising first and second sets of panels, each panel having an elongated body portion with longitudinal walls defining longitudinal channels with said body portion, the walls having lateral flanges overlying said body portion, key members detachably securing said sets of panels together in spaced relation, the panels of the first set overlying the panels of the second set, the adjacent edges of the body portions of overlying panels being spaced both laterally and vertically, each key member having its upper portion extending above the walls of the panels of the second set and being of less length than said channels to provide air flow passages between said panels and having a stem positioned between and spacing the adjacent walls of panels of said second set, said stem having lateral portions overhanging said adjacent walls and received in the channels and engaging the walls and flanges of panels of the first set to prevent lateral and vertical displacement of said panels, said awning including a cross-bar having a flange, said cross-bar extending transversely of said panels, fastening means securing said stem of each key member to said cross-bar, said fastening means including a pair of parallel portions embracing the flange on said cross-bar.

702

Jan. 10, 1939.      **G. A. HOUSEMAN**      Re. 20,975

AWNING

Original Filed Nov 25, 1935    2 Sheets–Sheet 1

(Front elevation view
of the sloping awning)

(Transverse section through
the roof of the awning)

APPENDIX B-2
20,975

I claim as my invention:

1. A sheet metal awning comprising side frames, roof cross bars connecting said frames, a plurality of narrow, laterally spaced roof plates extending transversely of said cross bars and being supported thereby in two sets in vertically spaced relation, the one set being adapted to rock relatively to the other set, the plates of the two sets being disposed so the plates of the one set cover the lateral spaces between the plates in the other set, and means for attaching the plates of the covering set to said roof bars, permitting said rocking movement.

2. A sheet metal awning comprising side frames, roof cross bars connecting said frames, a plurality of narrow, laterally spaced roof plates extending transversely of said cross bars and being supported thereby in two sets in vertically spaced relation, the one set being adapted to rock relatively to the other set, the plates of the two sets being disposed so the plates of the one set cover the lateral spaces between the plates in the other set, means for attaching the plates of the covering set to said roof bars, permitting said rocking movement, and said plates having depending ends providing a substantially vertical skirt at the front of said awning.

3. A sheet metal awning comprising side frames, roof cross bars connecting said frames, a plurality of narrow, laterally spaced roof plates having side flanges extending transversely of said cross bars and being supported thereby in two sets in vertically spaced relation, the one set being adapted to rock relatively to the other set, the plates of the two sets being relatively disposed so that the plates of the one set cover the lateral spaces between the plates in the other set, with the flanges of each set extending towards the other set of plates, and means for attaching severally the cover set of plates to the said roof bars to permit their rocking movement.

4. A sheet metal awning comprising side frames, roof cross bars connecting said frames, a plurality of narrow, laterally spaced roof plates having side flanges extending transversely of said cross bars and being supported thereby in two sets in vertically spaced relation, the one set being adapted to rock relatively to the other set, the plates of the two sets being relatively disposed so that the plates of the one set cover the lateral spaces between the plates in the other set, with the flanges of each set extending towards the other set of plates, means for attaching severally the cover set of plates to the said roof bars to permit their rocking movement, and said plates having depending ends providing a substantially vertical skirt at the front of said awning.

5. A sheet metal awning comprising side frames, roof cross bars connecting said frames, a plurality of narrow, laterally spaced roof plates having side flanges extending transversely of said cross bars and being supported thereby in two sets in vertically spaced relation, with the flanges of the upper set depending and the flanges of the lower set upright, the one set being adapted to rock relatively to the other set and being disposed to cover the lateral spaces between the plates of the lower set, and side curtains comprising substantially vertically disposed, parallel plates severally angling away from said side frames towards the rear, and means for attaching said side plates to said side frames.

6. A sheet metal awning comprising side frames, roof cross bars connecting said frames, a plurality of narrow, laterally spaced roof plates having side flanges extending transversely of said cross bars and being supported thereby in two sets in vertically spaced relation, with the flanges of the upper set depending and the flanges of the lower set upright, the one set being adapted to rock relatively to the other set and being disposed to cover the lateral spaces between the plates of the lower set, and side curtains comprising substantially vertically disposed, parallel plates severally angling away from said side frames towards the rear and each having oppositely turned side flanges, and means for attaching said side plates to said side frames.

7. In a sheet metal awning, a roof comprising cross bars, a plurality of narrow, laterally spaced roof plates extending transversely of said cross bars and being supported thereby in two sets in vertically spaced relation, the lower set of plates being fixed to said cross bars, the upper set being disposed to cover the lateral spaces between the plates in the lower set, short bars severally fixed to the plates of the upper set and depending through the spaces between the plates of the lower set, said short bars being pivotally connected to the said cross bars, and means connecting all of said short bars by which they may be operated in common to rock the plates of said upper set.

8. In a sheet metal awning, a roof comprising a plurality of narrow, laterally spaced, fixed plates, a plurality of narrow, laterally spaced plates located above said first named plates covering the space between and overlapping the margins of the fixed plates, and means for mounting the second named plates to rock about an axis parallel to their lengths with reference to the fixed plates, said fixed plates having upright side flanges and said rocking plates having depending side flanges.

9. In a sheet metal awning, a roof comprising a plurality of narrow, laterally spaced, fixed plates, a plurality of narrow, laterally spaced plates located above said first named plates covering the space between and overlapping the margins of the fixed plates, means for mounting the second named plates to rock about an axis parallel to their lengths with reference to the fixed plates, said fixed plates having upright side flanges, said rocking plates having depending side flanges, said flanges being provided with notches, the notches of the rocking and fixed plates being arranged in staggered relation.

10. In a sheet metal awning, a roof comprising cross bars, a plurality of narrow, laterally spaced roof plates extending transversely of said cross bars and being supported thereby in two sets in vertically spaced relation, the lower set of plates being fixed to said cross bars, the upper set being disposed to cover the lateral spaces between the plates in the lower set, short bars severally fixed to the plates of the upper set and depending through the spaces between the plates of the lower set, means providing pin and slot connection between said short bars and said cross bars, and means connecting all of said short bars by which they may be operated in common to rock the plates of said upper set.

11. In an awning of the class described, the combination of a series of lower spaced parallel plates having upstanding flanges mounted on a support adapted to be attached to a wall or the like in combination with a series of overlying, spaced, parallel staggered plates having depending flanges, said upper plates being mounted on the said support, closely spaced to one another and in close spaced parallel relationship with the

lower plates whereby the depending flanges of one upper plate together with a lower staggered plate obstructs all direct rays of light coming over the edge of a succeeding upper plate.

12. The device as claimed in claim 11, wherein the upper plates are so closely spaced to the lower plates that the depending flanges of the upper plates overlap the upstanding flanges of the lower plates.

13. In an awning of the class described, the combination of a series of spaced lower plates mounted on a support adapted to be attached to a wall or the like, in combination with a series of spaced upper plates staggered with respect to the lower plates, said upper plates being mounted to the said support by means of rigid supports which extend from the upper plates through the spaces between the lower plates.

14. The device as claimed in claim 13, wherein the said lower plates are provided with upstanding flanges whereby to form channels.

15. The device as claimed in claim 13, wherein the said lower plates are provided with upstanding flanges extending from their edges and the said upper plates are provided with opposing depending flanges extending from their edges.

16. An awning adapted to be fastened to a wall or the like support, including a curtain comprising a series of spaced overlapping parallel vertical depending plates, angling outwardly from the awning toward the wall at not more than ninety degrees.

17. The device as claimed in claim 16 wherein the said vertical plates are provided with flanges on the vertical edges to obstruct the flow of water in a parallel direction.

18. The device as claimed in claim 16, wherein the said vertical plates are provided with roof extensions adapted to join to the main roof of the awning.

19. In an awning of the class described, the combination of a series of lower, spaced, parallel, plates having upstanding flanges provided with ventilating notches mounted on a support in combination with a series of upper, overlying, spaced, parallel, staggered plates, having depending flanges provided with ventilating notches, said upper plates being mounted on the said support, closely spaced to one another and in close parallel relationship with the lower plate, the flanges of the upper plate being in overlapping relationship with the flanges of the lower plates.

## APPENDIX C

June 10, 1930.      A. BRAUNSTEIN      1,762,756

BUILDING CONSTRUCTION

Filed Feb. 25, 1926      4 Sheets-Sheet 1

(View of the ridge of the roof)

APPENDIX D

July 8, 1930.    R. R. BLOSS ET AL    1,770,063
METAL SHEETING
Filed Nov 4, 1927

(Manner of forming the joints
of roof metal between adjacent
sheets)

(Manner of forming the joints
between adjacent sheets with
a modified form of securing
clamp)

(Manner of forming the joints
between adjacent sheets with
another modified form of
securing clamp)

(Manner of forming the joints
between adjacent sheets and
the type of securing clamp used
in attaching the sheeting to
the purlins of the structure)

(Manner of forming the joints
between adjacent sheets when
using a modified form of cap
strip)

(Manner of forming the joints
between adjacent sheets showing
the method of fastening the
sheets when a cap strip is not
used)

APPENDIX E

Nov. 4, 1930.                R. R. BLOSS                1,780,862

METAL SHEETING

Filed Dec. 17, 1927      2 Sheets—Sheet 2

*Fig. 1*

(Adjacent edges of metal sheeting
 together with the cap strip and
 fastening means)

*Fig. 6*

(Modified form of means for
 fastening adjacent edges of
 sheeting together and to
 framework)

*Fig. 7*

(Another form of fastening
 means for securing the
 sheeting and cap strip to
 framework)

APPENDIX  F

March 5, 1940.          S. F. TAPMAN          2,192,719

BUILDING CONSTRUCTION

Filed Feb. 2, 1938          2 Sheets-Sheet 1

(Clamp comprising a clip having wings
adapted to be received within the folds
of the bent back edges of the cap and
the adjacent edges of the metal sheets)

APPENDIX G

Aug. 29, 1944.          H. H. DOE          2,356,833

ROOFING JOINT

Filed Oct. 30, 1941          3 Sheets-Sheet 3

(Spaced sheets and upturning edges associated
with a batten strip and fastener key)

(Spaced sheets and upturned edges
associated with a batten strip and
modified fastener key)

(Spaced sheets and upturned
edges associated with a batten
strip and modified fastener key)

(Spaced sheets and upturned
edges associated with a batten
strip and modified fastener key)

APPENDIX H

Oct. 1, 1946.    G. H. HUNTINGTON    2,408,557
SHEET METAL ROOFING
Filed Jan. 19, 1945

(Form of clip fastener)

(Modified form of clip fastener)

710

APPENDIX  I

July 24, 1951          M. HARRISON ET AL          2,562,092

METAL AWNING CONSTRUCTION

Filed Dec. 15, 1945

(Perspective view
of an awning)

*Fig. 1.*

*Fig. 2.*

(Transverse section in substantially
the plane of line II-II of Fig. 1)

*Fig. 3.*

(Longitudinal staggered section in substantially
the plane of line III-III of Fig. 1)

*Fig. 4.*

(Fragmentary view similar to
Fig. 2, and on a larger scale)

*Fig. 5.*

(Fragmentary view showing
one of the inner edge
portions of one of the
cover members)