**B. & M. CORPORATION, Plaintiff-Appellant,**

v.

**KOOLVENT ALUMINUM AWNING CORPORATION OF INDIANA, Defendant-Appellee.**

No. 12263.

United States Court of Appeals Seventh Circuit.

July 10, 1958.

Charles C. Baker, Harvey A. Grabill, Henry W. Blue, Jr., Indianapolis, Ind., Robert F. Davis, Ellsworth H. Mosher, Washington, D. C., for appellant.

William H. Parmelee, Elmer S. Utzler, Coleman Harrison, Pittsburgh, Pa., George O. Chambers, Shine & Chambers, Anderson, Ind., for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and PARKINSON, Circuit Judges.

PARKINSON, Circuit Judge.

This is a patent infringement suit. The patent in question, No. 2,542,919, is owned by plaintiff. It was issued February 20, 1951 on application of Dewey J. Freeman filed June 13, 1946 and will be hereinafter referred to as the Freeman patent.

The complaint sought damages for infringement and to enjoin defendant from further infringement. The defendant, *inter alia,* pleaded invalidity as a defense. Trial was to the court.

The District Court made extensive findings of fact and stated its conclusions of law thereon in addition to handing down a written opinion. The opinion is reported at 156 F.Supp. 691.

Judgment was entered for the defendant on the findings and conclusions that claims 1 through 10 of the Freeman patent, the only ones involved and relied upon by plaintiff, were invalid by reason of anticipation and lack of invention and, therefore, not infringed. This appeal followed.

Metal awnings of the general type here involved first came into use prior to World War II. They were then constructed of sheet steel with the "covering or roof of the awning" comprised of a number of laterally spaced plates having side flanges. The plates are in two alternating sets. The lower members are called "pans" and the upper members are called "covers". The covers with their flanges extending downward cover the area between the pans, the flanges of which extend upward. They were assembled by bolting the pans and covers together with brackets so that air and some light could pass between the flanges.

One Houseman obtained a patent on this type awning. It was later reissued and he sold manufacturing rights thereunder. About this time the name "Kool-Vent" was adopted.

One Babin, a predecessor of plaintiff, obtained from Houseman all manufacturing and selling rights in Louisiana. Others obtained similar rights in other states throughout the country.

Freeman was a roofer and sheet metal worker and worked with Babin on Kool-Vent installations prior to World War II. In making these installations it was customary to drill holes through the pans and covers and through the supporting cross members and pass bolts through these holes and thus fasten them together. This was the method in general use in the industry at that time.

During World War II, when the supply of steel became short, Babin and Freeman left the sheet metal awning business. Babin returned to the business in 1945. Freeman never returned actively but continued to be interested in the manufacture and installation aspect. He devised the construction embodied in the patent in suit. He discussed the possibility of its manufacture with Babin, who still had rights under the Houseman patent, and together they approached patent attorneys in the latter part of 1945.

Freeman filed application for the patent in suit in the Patent Office in early 1946. He assigned a part interest to Mr. Babin and Mr. Melancon, an associate of Babin's. The patent issued on February 20, 1951 and eventually all rights thereto were assigned to plaintiff.

The patent in suit provided for a clip which held the pans and covers forming the roof in place on the supporting cross members without the necessity of nuts and bolts and changing the configuration of the pan and cover flanges so they could be held in place by such clips.

In 1948 Babin and his associates circularized the industry suggesting adoption of the construction embodied in the

applied for patent and offering to supply, for a price, what Babin called "patent pending clips" for such construction.

The defendant adopted the Freeman construction and has continued to use it up to the present time with the exception of a short period during 1954. At one time in 1954 the plaintiff accused the defendant of infringement. The defendant then changed to another type of clip. The evidence as to why the defendant returned to the type of clip used by plaintiff is in conflict. However, defendant did so and there is no question that defendant has infringed the patent in suit if it be a valid patent.

Defendant, under its defense of invalidity, submitted to the court below a series of prior art patents [1] and contended that these made disclosures additional to and beyond those the Patent Office had seen and considered when it granted the Freeman patent. With this the plaintiff disagreed.

Accordingly the plaintiff asserts in its brief that "[t]he issue is whether or not the improvement over the Houseman construction that is shown and claimed in the Freeman patent is anticipated by these additional patents", or "[t]his case turns upon the one question of whether or not the Freeman patent No. 2,542,919 (Claims 1 to 10, inclusive) is invalid by reason of anticipation by the prior art."

The District Court found that Braunstein, Bloss et al., Bloss, Tapman, Doe and Huntington in general and Bloss et al. specifically anticipated Freeman; that Bloss et al. has a clip fastener for a non-ventilated roof which avoids the use of screws, bolts and equivalent fasteners the same as Freeman; that the vertical portion or shank of Bloss et al. is not as long as would be necessary for a ventilated roof but performs the same function; that the top laterally extending wings of the Bloss et al. clip overhang the side flanges of the under members just like the Freeman clip; that the Bloss et al. cover has downwardly-turned sides with inward turned lips that hook under the ends of the top laterally extending wings of the clip fastener; and that all the parts of the Freeman clip fastener find their counterpart in the Bloss et al. clip fastener.

The District Court further found that neither Freeman nor plaintiff were in any way responsible for the development of roll forming equipment, which facilitated the making of the configuration in the pans and covers, and specifically found that Freeman merely substituted one well-known type of fastener found in the prior art for the type of fastening used in the Houseman patent.

■ There is no question that the patent in suit is invalid, in view of the prior art, if the patents anticipatory of Freeman are of an art analogous to that of Freeman's patent. In short are the arts of sheet metal roofing and sheet metal awnings analogous?

■ The test to be applied in determining whether arts are analogous or nonanalogous has been stated in several different ways. This court, in holding the processes used in the lumber industry in cutting timber in a saw mill and those used in the meat industry for the slicing of meat were nonanalogous, said in A. J. Deer Co., Inc., v. U. S. Slicing Mach. Co., 7 Cir., 1927, 21 F.2d 812, at page 813:

"We are of opinion that whether arts or uses are analogous depends upon the similarity of their elements and purposes. If the elements and purposes in one art are related and similar to those in another art, and because and by reason of that relation and similarity make an appeal to the mind of a person having me-

| 1. | Patent Number | Name | Date |
|---|---|---|---|
| | 1,762,756 | Braunstein | 6/10/30 |
| | 1,770,063 | Bloss et al. | 7/8/30 |
| | 1,780,862 | Bloss | 11/4/30 |
| | 2,192,719 | Tapman | 3/5/40 |
| | 2,356,833 | Doe | 8/29/44 |
| | 2,408,557 | Huntington | 10/1/46 |

chanical skill and knowledge of the purposes of the other art, then we are of opinion that such arts must be said to be analogous, and, if the converse is true, they are non-analogous arts."

We quoted Deer in Copeman Laboratories Co. v. General Plastics Corporation, 7 Cir., 1945, 149 F.2d 962, and held the art of making chocolate drops was not analogous to the art of freezing ice cubes. We adhere to both of those decisions.

Reduced to simple terms of basic applicability here we believe the test is whether the art of sheet metal roofing is so remote that students of the art of sheet metal awnings would not naturally have looked there for help. General Metals Powder Co. v. S. K. Wellman Co., 6 Cir., 1946, 157 F.2d 505, 510; Allied Wheel Products v. Rude, 6 Cir., 1953, 206 F.2d 752, 755. The answer is very obviously in the negative.

■ Freeman was a sheet metal worker. He was a roofer, a welder and a sheet metal gutter worker. Freeman installed KoolVent sheet metal awnings. He recognized the improvement which would result from a fastener which would hold the covers and the pans together on the KoolVent awning roofs without the necessity of brackets, nuts and bolts and the drilling of holes. The fastening clip used in sheet metal roofing was the answer. All he was required to do was to make the same identical clip with the shank of such length to either draw the pans and covers together tight or to separate them to any degree for the air and/or light circulation desired. Any sheet metal worker studying or engaged in the art of sheet metal awnings attempting to find a method of rigidly fastening the covers and pans of a sheet metal awning roof, ventilated or closed, would naturally look to the art of sheet metal roofing for help.

This record shows that Freeman had a broad knowledge of sheet metal roofing. We believe the fields of sheet metal awning and sheet metal roofing are much closer than the art of restoring steel wire springs in marine clocks and coil springs in furniture which were held to be analogous in Lovell Manufacturing Company v. Cary, 1893, 147 U.S. 623, 13 S.Ct. 472, 37 L.Ed. 307, and are much closer than metal working and re-enforcing concrete held to be kindred in Vandenburgh v. Truscon Steel Company, 1923, 261 U.S. 6, 15, 43 S.Ct. 331, 67 L.Ed. 507.

■ Invention does not consist in the mere conception of applying an old device to a new use if the new use is so analogous to the old that the thought of adopting the device and applying it to the new use would occur to one skilled in the art and seeking to devise means to perform the desired function. Nor is invention involved in such a case even though some changes or modifications are necessary to the practical application of the device to the new use. Concrete Appliances Company v. Gomery, 1925, 269 U.S. 177, 185, 46 S.Ct. 42, 70 L.Ed. 222; International Steel Wool Corporation v. Williams Co., 6 Cir., 1943, 137 F.2d 342, 346.

At first blush there are some of us born near the turn of the century who might think of roofing in terms of wooden shingles and of awnings in terms of canvas. Of course there is no analogy between the arts of wood shingle roofing and canvas awnings. However, the sheet metal industry has changed that and the elements and purposes in the art of sheet metal roofing are so related and similar to those of the art of sheet metal awnings that they naturally and instinctively make an appeal to the mind of a person having mechanical skill and knowledge of sheet metal awnings. We hold that the arts are analogous. It is to be noted that about half of the patents cited and examined by the Patent Office dealt with metal roofing and one with metal decking. However, those set out in footnote 1 and relied on by the District Court in finding the patent invalid were not included.

Plaintiff asserts in its brief that the Fifth Circuit in Miles v. Matthews, 171

F.2d 38, held, *in effect*, "that patents from the roofing art are not from an analogous art and do not anticipate a patent for a ventilated metal awning." We do not so interpret that decision but if plaintiff is correct in its contention that it does hold that the arts of sheet metal roofing and sheet metal awnings are nonanalogous we respectfully disagree with the Fifth Circuit in that regard.

We believe the findings of fact are supported by the evidence and the District Court reached the correct conclusion.

The judgment is affirmed.